**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| WARREN GANUES and DOMINIC VARRIALE, on Behalf of Themselves and ALL Others Similarly Situated,  Plaintiffs,  v.  WORLD WRESTLING ENTERTAINMENT, INC., VINCENT K. MCMAHON, and GEORGE A. BARRIOS,  Defendants. | Case No. 5:14-cv-01070-AWT  Dated: September 23, 2014 |
| CURTIS SWANSON, on Behalf of Himself and ALL Others Similarly Situated,  Plaintiff,  v.  WORLD WRESTLING ENTERTAINMENT, INC., VINCENT K. MCMAHON, and GEORGE A. BARRIOS,  Defendants. | Case No. 3:14-cv-01228-JCH |

**MEMORANDUM OF LAW IN SUPPORT OF UNIVERSITY OF PUERTO RICO RETIREMENT SYSTEM'S MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ................................................................................................................................1

SUMMARY OF THE ACTION ..........................................................................................................1

ARGUMENT ........................................................................................................................................3

A. The Actions Should Be Consolidated ................................................................................3

B. UPR Should Be Appointed Lead Plaintiff ........................................................................4

    1. UPR Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA ................................................................4

    2. UPR Has the Largest Financial Interest .................................................................5

    3. UPR Otherwise Satisfies the Requirements of Rule 23 .........................................6

C. The Court Should Approve UPR's Selection of Lead Counsel .........................................7

CONCLUSION .....................................................................................................................................8

## TABLE OF AUTHORITIES

**Cases**                                                                                                    Page(s)

*Glauser v. EVCI Ctr. Colls. Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) ..................................................................................5

*In re Cavanuagh*,
    306 F.3d 726 (9th Cir. 2002) ......................................................................................4

*In re Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992).........................................................................................6

*In re Host America Corp. Sec. Litig.*,
    236 F.R.D. 102 (D. Conn. 2006)..........................................................................4, 5, 6

*In re MicroStrategy Inc. Sec. Litig.*,
    110 F. Supp. 2d 427 (E.D. Va. 2000) .........................................................................3

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990).......................................................................................3

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2001) ...............................................................................3, 7

*Tanne v. Autobytel*,
    226 F.R.D. 659 (C.D. Cal. 2005) .............................................................................6, 7

*Werner v. Satterlee, Stephens, Burke & Burke*,
    797 F. Supp. 1196 (S.D.N.Y. 1992).............................................................................3

**Statutes and Rules**

15 U.S.C. §78u-4 ..............................................................................................................4

15 U.S.C. § 78u-4(a)(3)(A)...............................................................................................4

15 U.S.C. § 78u-4(a)(3)(B)...............................................................................................4

15 U.S.C. § 78u-4(a)(3)(B)(ii) ..........................................................................................3

15 U.S.C. § 78u-4(a)(3)(B)(iii) .........................................................................................5

15 U.S.C. §78u-4(a)(3)(B)(v) ...........................................................................................7

Fed.R.Civ.P. 23.............................................................................................................4, 6

Fed.R.Civ.P. 23(a)(4) ..................................................................................................................6

Fed.R.Civ.P. 42(a) ......................................................................................................................3

**Other Materials**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679 ...............................4, 5

Movant, the University of Puerto Rico Retirement System ("UPR"), by its counsel, respectfully submits this memorandum of law in support of its motion for consolidation of the above-captioned actions, appointment as Lead Plaintiff and approval of its selection of Lead Counsel.

## INTRODUCTION

This is a class action brought on behalf of all persons who purchased the common stock of World Wrestling Entertainment, Inc. ("WWE" or the "Company") between October 31, 2013 and May 16, 2014, inclusive (the "Class Period") against WWE and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 (the "Exchange Act").

In a case such as this one, the federal securities laws require that the Court appoint a Lead Plaintiff. The most adequate plaintiff to be appointed lead plaintiff is presumed to be the movant with the largest financial interest in the relief sought by the class. Here, it is believed that UPR has that largest financial interest and should be appointed lead plaintiff. Moreover, UPR is an institutional investor, which are favored for selection as Lead Plaintiff. UPR has selected and retained Abraham, Fruchter & Twersky, LLP ("AF&T") to be appointed Lead Counsel. As demonstrated below, AF&T has substantial experience in prosecuting securities class actions. Accordingly, UPR respectfully requests that the Court appoint it as Lead Plaintiff and otherwise grant its motion.

## SUMMARY OF THE ACTION[1]

WWE is a media and entertainment company that focuses on the wrestling business. Its wrestling events, such as *Monday Night Raw* and *Friday Night Smackdown* are televised on Comcast Corporation's USA Network and the Syfy Channel, respectively. Complaint ¶2.

---

[1] These facts are based on the Class Action Complaint (the "Complaint") filed in *Ganues v. World Wrestling Entertainment, Inc.*, No. 5:14-cv-01070-AWT.

In connection with the negotiations for a new long-term television contract, Defendants made false and misleading public statements about how the new television license agreement would be worth double the existing agreement.  Complaint ¶3.  Defendants claimed that WWE's high ratings, its live programming, its comparison to other live sporting events, such as NASCAR, and that it would potentially attract multiple bidders were the reasons it would be able to achieve a premium fee in the negotiations.  Complaint ¶3.

While the Company pointed to these reasons for why it was going to obtain a premium fee, it de-emphasized the fact that advertisers paid less for the opportunity to reach viewers of WWE's programs rather than other sports or any other show that was on the USA Network, and that the Company was about to launch its own WWE Network, a subscription service that would likely compete for viewers with its other programming.  Complaint ¶4.

Defendants' deception was finally revealed on May 15, 2014, when the Company announced that it had reached agreement with NBCUniversal Cable Entertainment on a contract to distribute its *Monday Night Raw* and *Friday Night Smackdown* properties.  In the announcement, however, no information was disclosed about the value or the length of the contract.  After the market closed, WWE issued a press release disclosing the value of all of WWE's key television distribution agreements, which increased by approximately $92 million, including an increase of approximately $57 million in the U.S. market.  Rather than entering into an agreement that doubled in value for its television rights, the agreement only provided an approximate 50% increase in value.  When the truth was revealed, WWE's stock price plummeted to $11.27 per share on May 16, 2014, a decline of approximately 43% from the prior day closing price of $19.93 per share.  Complaint ¶5.

## ARGUMENT

A.   **The Actions Should Be Consolidated**

Rule 42(a) grants the Court discretion to consolidate "actions involving a common question of law or fact." The Court has broad discretion under this rule to consolidate cases pending within this District. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284-85 (2d Cir. 1990). In addition, the Exchange Act dictates that consolidation should occur where, as here, more than one action asserts "substantially the same claim." 15 U.S.C. § 78u-4(a)(3)(B)(ii). The actions, however, need not be identical before they may be consolidated. *See, e.g.*, *Kaplan v. Gelfond*, 240 F.R.D. 88, 91-92 (S.D.N.Y. 2001) (differing class periods and different defendants do not prevent consolidation).

Courts, therefore, routinely find that consolidating multiple securities cases is an efficient solution where the complaints arise generally from the same alleged false and misleading statements. *See, e.g., Werner v. Satterlee, Stephens, Burke & Burke*, 797 F. Supp. 1196, 1211 (S.D.N.Y. 1992) (consolidation appropriate in securities class actions); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 431 (E.D. Va. 2000) ("consolidation is often warranted where multiple securities fraud class actions are based on the same public statements and reports.") (internal quotations omitted). Any minor differences in asserted claims will not prevent consolidation. *See, e.g.*, *Kaplan*, 240 F.R.D. at 91 (finding that different class periods and different defendants will not prevent consolidation).

Here, the above-captioned actions involve the same defendants and the same claims under the Exchange Act. Given the overlapping facts and common defendants among the cases, consolidation is not only appropriate, but will also conserve judicial resources and promote the efficient prosecution of these actions. *Kaplan*, 240 F.R.D. at 92.

**B.     UPR Should Be Appointed Lead Plaintiff**

The Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, permits any member of the class to move for appointment as Lead Plaintiff within 60 days of the publication of notice that the first action asserting class action claims has been filed.  *See* 15 U.S.C. § 78u-4(a)(3)(A).  The PSLRA notice in this litigation was published on July 25, 2014, making the deadline to move for Lead Plaintiff no later than September 23, 2014.  *See* Declaration of Joseph P. Guglielmo in Support of Movant University of Puerto Rico Retirement System's Motion For Consolidation, Appointment As Lead Plaintiff and Approval of Its Selection of Lead Counsel ("Guglielmo Decl."), Exhibit A.  UPR satisfies the deadline by making this motion.

The Court is required to appoint a Lead Plaintiff that is the "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B).   The PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  *Id.*; *see also In re Host America Corp. Sec. Litig.*, 236 F.R.D. 102, 104 (D. Conn. 2006), citing *In re Cavanuagh*, 306 F.3d 726, 730 (9th Cir. 2002).

      **1.     UPR Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA**

UPR is a large institutional investor.  The congressional objective in enacting the lead plaintiff provisions was to encourage large institutional investors to play a more prominent role in securities class actions.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by

- 4 -

improving the quality of representation in securities class actions."); *see also Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.") (citation omitted).

Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to manage effectively complex securities litigation. UPR is precisely the type of lead plaintiff Congress envisioned when it passed the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 733 ("Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.").

UPR is a sophisticated institutional investor that has almost $1.2 billion in assets under management. It is a large organization, which operates on behalf of active and retired employees, with more than 11,000 active employees enrolled in the retirement system as of the end of 2013.

### 2. UPR Has the Largest Financial Interest

UPR also should be appointed Lead Plaintiff because it has the largest financial interest in the relief sought. 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also In re Host America Corp. Sec. Litig.*, 236 F.R.D. at 105; Guglielmo Decl., Ex B & Ex. C. To the best of UPR's knowledge, there are no other applicants who have sought, or are seeking, appointment as Lead Plaintiff that have a larger financial interest arising from the purchase of WWE common stock. Accordingly,

UPR believes that it has the largest financial interest of any qualified movant seeking appointment as Lead Plaintiff.

### 3. **UPR Otherwise Satisfies the Requirements of Rule 23**

In addition to possessing the largest financial interest in the outcome of the litigation, UPR satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. On a motion to serve as Lead Plaintiff, the movant must only make a preliminary showing that it satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. *See In re Host America Corp. Sec. Litig.*, 236 F.R.D. at 105; *Tanne v. Autobytel*, 226 F.R.D. 659, 666 (C.D. Cal. 2005) ("A wide ranging analysis is not appropriate to determine whether the [movant] has made a prima facie showing that he satisfies the requirements of Rule 23, and should be left for consideration on a motion for class certification.") (internal quotations and citation omitted). Here, UPR unquestionably satisfies both requirements.

UPR's claims are typical of the claims of other purchasers of WWE common stock. Typicality exists if claims "arise[] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *See*, *e.g.*, *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). UPR's claims in this action arise from the very same course of conduct as the claims of the other members of the class -- *i.e.*, Defendants' misstatements about its new televisions deal.

UPR likewise satisfies the adequacy requirement of Rule 23. Under Rule 23(a)(4), the representative parties must fairly and adequately protect the interests of the class. "The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome

of the case to ensure vigorous advocacy." *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007). UPR easily satisfies the elements of the adequacy requirement. UPR's interests are perfectly aligned with those of the other members of the class and are not antagonistic in any way. *See Autobytel*, 226 F.R.D. at 667. There are, furthermore, no facts suggesting that any actual or potential conflict of interest or other antagonism exists between UPR and other class members. Indeed, UPR has submitted a Certification, affirming the understanding of its duties owed to class members through its commitment to oversee the prosecution of this Action. *See* Guglielmo Decl., Ex. B. Through its Certification, UPR accepts the fiduciary obligations it will assume if appointed Lead Plaintiff in this action. *Id*.

Finally, UPR has demonstrated her adequacy through the selection of AF&T to represent the class. As discussed more fully below, AF&T is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated an ability to conduct complex securities class action litigation effectively.

**C.     The Court Should Approve UPR's Selection of Lead Counsel**

The Court should approve UPR's choice of the law firm AF&T to serve as Lead Counsel. Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), a movant shall, subject to Court approval, select and retain counsel to represent the class they seek to represent. UPR has selected and retained the law firm AF&T.

AF&T is a law firm experienced in prosecuting class action lawsuits and has the skill and knowledge that will enable it to prosecute this action effectively and expeditiously. *See* Guglielmo Decl. at Ex. D (AF&T Firm Biography). AF&T has successfully prosecuted numerous securities fraud class actions and obtained excellent results on behalf of defrauded investors around the country. *Id.* AF&T is currently serving as the court-appointed lead or co-

lead counsel in a number of securities class actions including, *inter alia*: *In re Fuqi International, Inc. Sec. Litig.,* 10 Civ. 2515 (DAB) (S.D.N.Y.); *Brown v. China Integrated Energy, Inc. et al.*, 11 Civ. 2559 (PLAx) (C.D. Cal.); and *Steginsky v. Xcelera Inc., et al.,*3:12-cv-00188-SRU (D. Conn.).

Similarly, Scott + Scott has extensive experience in prosecuting securities class actions as its firm resume demonstrates. *See* Guglielmo Decl. at Ex. E (Scott & Scott Firm Biography).

Accordingly, the Court should approve UPR's selection of AF&T as Lead Counsel and Scott + Scott as local counsel.

## CONCLUSION

For the reasons discussed herein, the University of Puerto Rico Retirement System respectfully requests that the Court: (i) consolidate the above-captioned actions; (ii) appoint it as Lead Plaintiff; and (iii) approve the selection of AF&T as Lead Counsel.

Dated: September 23, 2014

        **ABRAHAM, FRUCHTER**
         **& TWERSKY, LLP**

        */s/*
        Mitchell M.Z. Twersky
        Lawrence D. Levit
        One Penn Plaza, Suite 2805
        New York, NY 10119
        Telephone: (212) 279-5050
        Facsimile:  (212) 279-3655
        mtwersky@aftlaw.com
        llevit@aftlaw.com

        **Counsel for the Proposed Lead Plaintiff**
        **University of Puerto Rico**
        **Retirement System**

- 9 -

        **SCOTT + SCOTT LLP**
        Joseph P. Guglielmo (CT 27481)
        156 South Main Street
        P.O. Box 192
        Colchester, CT 06415
        Telephone: (860) 537-5537
        Facsimile:  (860) 537- 432
        jguglielmo@scott-scott.com

        **Proposed Local Counsel**