**ROME McGUIGAN, P.C.**
JEFFREY L. MENT (# ct12299)
JONATHAN CHAPPELL (# ct 27237)
1 State Street, 13th Floor
Hartford, CT 06103
Telephone: (860) 549-1000
Fax: (860) 724-3921

**KAHN SWICK & FOTI, LLC**
KIM E. MILLER (KM-6996) (*pro hac vice* pending)
BRUCE W. DONA (BD-3730)
250 Park Avenue, Suite 2040
New York, NY 10177
Telephone:  (212) 696-3730
Fax:  (504) 455-1498

*Counsel for WWE Family Investors Group*
*& Proposed Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| WARREN GANUES and DOMINIC VARRIALE, on Behalf of Themselves and All Others Similarly Situated, | Case: 3:14-cv-01070-AWT |
| | HON. ALVIN W. THOMPSON |
| Plaintiffs, | |
| vs. | |
| WORLD WRESTLING ENTERTAINMENT, INC., VINCENT K. MCMAHON, and GEORGE A. BARRIOS, | |
| Defendants. | |

(caption continued on following page)

**REPLY MEMORANDUM IN FURTHER SUPPORT OF THE MOTION OF WWE FAMILY INVESTORS GROUP TO CONSOLIDATE RELATED ACTIONS, TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**

|  |  |  |
|---|---|---|
| CURTIS SWANSON, On Behalf of Himself and All Others Similarly Situated, | ) ) ) ) | Case: 3:14-cv-01228-JCL |
| Plaintiff, | ) ) ) | HON. JANET C. HALL |
| vs. | ) ) |  |
| WORLD WRESTLING ENTERTAINMENT, INC., VINCENT K. MCMAHON, and GEORGE A. BARRIOS, | ) ) ) ) ) ) |  |
| Defendants. | ) ) ) |  |

Presumptive Lead Plaintiff WWE Family Investors Group ("Movant"), led by Mohsin Ansari on behalf of himself and his immediate family members, respectfully submits this reply memorandum in further support of its Motion for consolidation of the related above-captioned Actions ("Action"), appointment as Lead Plaintiff, for approval of its selection of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel, and in opposition to the competing Lead Plaintiff motion filed by the University of Puerto Rico Retirement System ("UPR") in the Action.

Movant is the presumptive lead plaintiff in this Action, with losses of $3,506,105.04. Moreover, the presumption that Movant is the most adequate plaintiff has not been and cannot be rebutted with proof of inadequacy by any competing movant. UPR concedes in its response brief that the WWE Family Investors Group has the largest losses but, lacking any proof to rebut the presumption favoring WWE Group, UPR instead makes poorly researched, flatly wrong, and speculative claims that WWE Group is atypical. Each of UPR's attacks on the WWE Family Investors Group can be summarily rejected by a cursory review of the pleadings, documents readily available on the internet, and case law regarding the lead plaintiff appointment process.

1

# ARGUMENT

### A. Movant Has the Largest Losses and Is the Presumptive Lead Plaintiff

The PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person, or group of persons, that: a) filed the initial complaint, or moved for appointment as Lead Plaintiff; b) ***has the largest financial interest in the relief sought by the class***; c) otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also Corwin v. Seizinger*, 2008 U.S. Dist. LEXIS 3045 (S.D.N.Y. Jan. 8, 2008), *3 (*emphasis added*). WWE Family Investors Group meets this test.

UPR attempts to obfuscate this straight-forward process by wrongly claiming in its opposition brief at p. 13 that its status as "the institutional investor with the largest loss" among the competing movants means that UPR should be appointed lead plaintiff despite having a mere fraction of the losses of WWE Group. UPR grossly mischaracterizes the mandates of the PSLRA which expressly provides that the movant with the largest loss should be afforded the presumption as the most adequate plaintiff.[1] The cases cited by UPR do not state otherwise.[2] As directed by the plain language of the statute to appoint the movant with "the largest financial interest in the relief sought by the class" who is otherwise adequate, courts place the most

---

[1] *See In re Cavanaugh*, 306 F.3d 726, 737 n.20 (9th Cir. 2002) ("if financial sophistication had been Congress' principal concern, it would not have made the plaintiff who lost the most money the presumptive lead plaintiff."); *see also Tanne v. Autobytel, Inc*., 226 F.R.D. 659, 670 (C.D. Cal. 2005) ("although the PSLRA was enacted to encourage institutional investors to take a more active role in securities litigation, the Ninth Circuit has held that it does not require[ ] the district court to select the plaintiff it believes is the most sophisticated investor available. As a consequence, there is no per se rule requiring that an institutional investor be appointed lead plaintiff in lieu of an individual who has a larger stake in the litigation.")

[2] In *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 46, 49 (S.D.N.Y. 1988), the court appointed plaintiffs who jointly moved as non-competing co-lead plaintiffs; in *Olsen v. New York Community Bancorp, Inc.*, 233 F.R.D. 101, 106-107 (E.D.N.Y. 2005), and in *In re UBS Auction Rate Sec. Litig.*, No. 08-2967, 2008 U.S. Dist. LEXIS 56016, at *15-16, the courts appointed the group with largest losses as lead plaintiff; in *Shi v. Sina Corp.*, No. 05-2154, 2005 U.S. Dist. LEXIS 13176, at *7 (S.D.N.Y. July 1, 2005) an opposing movant rebutted the lead plaintiff presumption in favor of the largest movant with evidence that the member of the seven person unrelated group with the largest losses was a convicted felon and, furthermore, two members of the group failed to sign affidavit; and in *In re Cendant Corp. Litig.*, 264 F.3d 201, 269 (3d Cir. 2001), which was an order approving a settlement, the court held that the district court correctly appointed the movant with the largest losses as lead plaintiff.

emphasis on the loss suffered by the movant.  *See e.g., Kaplan v. Gelfond,* 240 F.R.D. 88, 93 (S.D.N.Y. 2007).

In its response memorandum, UPR concedes that the WWE Family Investors Group has the largest losses of all competing movants.[3]  Therefore, the presumption of most adequate plaintiff attaches to the WWE Family Investors Group.

### B. The WWE Family Investors Group easily satisfies the typicality and adequacy requirements of Fed. R. Civ. P. 23

The PSLRA provides that this presumption may be rebutted "only upon proof" from a member of the Class that the presumptive Lead Plaintiff will not fairly and adequately protect the interests of the Class, or is subject to unique defenses that will render it incapable of adequately representing the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Lacking any such proof, UPR instead makes a myriad of unfounded, disingenuous, and contradictory attacks that WWE Family Investors Group is atypical.  UPR's attacks are poorly researched, if not purely speculative, and can each be easily disregarded.

#### i. WWE Family Investors Group is a Family Well-Suited To Serve as Lead Plaintiffs

Movant is composed of a family, including a father and his two minor children, who owned the shares at issue here in six different accounts, including one individual account for the father, two IRA accounts for the father, two trust accounts for the children for which the father is the custodian, and one LLC account for the family, which only contains investments on behalf of the family and for which the father is a member, the manager and the agent. *See* Dkt. # 40-3. Indeed, the individual account for the father alone has losses exceeding $2 million, dramatically exceeding the losses of all other movants.

---

[3] WWE Family Investors Group also possesses the characteristics of a sophisticated investor, since Mr. Ansari is a graduate of MIT and has invested on his own behalf and on behalf of his family for many years. *See* Dkt. # 40-3.

While courts in this circuit have held that groups of unrelated investors without a demonstrated pre-litigation relationship should not be appointed lead plaintiffs, it is perfectly proper to appoint a family as Lead Plaintiff, which obviously has a demonstrated and strong pre-litigation relationship. *See, e.g., In re McDermott Int'l, Inc. Secs. Litig.,* 2009 U.S. Dist. LEXIS 21539 at *11 (S.D.N.Y. Mar. 6, 2009) (appointing a movant group composed of three family members with $2.95 million in losses over various other movants, including an institutional investor with $801,865 in losses because "[a]s family members, they may be properly considered a "group of persons" permitted by the PSLRA to be appointed lead plaintiff.") As a family, WWE Family Investors Group has a pre-litigation relationship and thus can serve a lead plaintiff.

The attack on families comes as no surprise from UPR's lawyers.  Scott + Scott recently contested a lead plaintiff motion in which KSF's clients, a husband and a wife, were appointed lead plaintiffs.  Unsurprisingly, the court did not agree with Scott + Scott's contention that husbands and wives are not appropriate to serve as co-lead plaintiffs.  *See Davison, et al. v. Ventrus Biosciences, Inc. et al.*, No. 13-CV-3119, Order (S.D.N.Y. July, 23, 2013) (attached as Exhibit A to the Declaration of Kim E. Miller In Support of the Reply Memorandum In Further Support of the Motion of the WWE Family Investors Group to Consolidate Related Actions, to be Appointed Lead Plaintiff and to Approve Lead Plaintiffs' Choice of Counsel ("Miller Reply Decl."). Moreover, Scott + Scott's attorneys have argued in other cases that investors with pre-existing relationships are impermissible groups under the PSLRA and have also been rejected. *See Bang v. Acura Pharms., Inc.*, No. 10-5757, 2011 U.S. Dist. LEXIS 2550, at *14-16 (N.D. Ill. Jan. 11, 2011) (appointing a group of three investors represented by KSF over an individual investor with smaller losses represented by Scott + Scott).

    ii.  **Movant has standing and authority to bring suit on behalf of the accounts and has provided sufficient details regarding its accounts**

The WWE Family Investors Group's motion makes clear that the six accounts all contain securities of WWE purchased by the members of the WWE Family Investors Group. Furthermore, all the accounts in which the WWE Family Investors Group purchased or sold WWE securities during the Class Period are included in their sworn certifications as required by the PSLRA.

Despite these statements, UPR speculates in its response brief that the WWE Family Investors Group is being untruthful.  Such an attack is wildly inappropriate considering WWE Family Investors Group has provided certifications and a declaration in its supporting papers verifying that the damaged shares were purchased by or on behalf of the family. UPR ignores this evidence.  Irresponsibly, UPR submits an outdated article from January 27, 2009 mentioning Mr. Ansari's position as an asset manager at Stark Investments.  Of course, there is nothing wrong with being an asset manager at all – UPR hints baselessly that this somehow implies Mr. Ansari may be including in his family's claimed losses those of other investors for whom he managed assets.  This is not true. Mr. Ansari's previously-submitted declaration demonstrates that all of the accounts in the WWE Family Investor Group belong to Mr. Ansari and his family, including all of the assets in the LLC. *See* Dkt. #  40-3.

Further, even the most basic due diligence – clearly not conducted here by UPR or its attorneys – reveals news articles stating that Mr. Ansari left his position at Stark Investments in 2009 shortly after the other individual mentioned in the article, Anshul Rustagi, joined Stark Investments. *See* Miller Reply Decl. at Exh. B.  Counsel for WWE Family Investors Group further clarified that all of the accounts in the WWE Family Investor Group belong to Mr. Ansari and his family, including all of the assets in the LLC in a letter to Counsel for UPR on October

5

13, 2014, but UPR ignored these representations and continues to press this baseless attack without even acknowledging the correspondence at all. *See* Dkt. # 40-2.

WWE Family Investors Group is the owner of all the WWE shares purchased in the six accounts. As such, WWE Family Investors Group, through Mr. Ansari, has authority to bring claims on behalf of themselves, who were harmed by the alleged fraud. UPR's insistence on the need for WWE Family Investors Group to be attorney in fact, or obtain authority to sue on behalf of clients, is entirely misplaced because WWE Family Investors Group owns these shares in their own names and there are no clients involved with these accounts. No matter how much UPR outrageously speculates without a shred of proof that such clients exist, Mr. Ansari and his family are the owners of all of the WWE shares in the accounts listed, and Mr. Ansari has authority to bring these claims on the family's behalf. *See* Decl. of Mohsin Ansari at Dkt. #40-3.

The absurdity of UPR's attacks is further evidenced by their contradictory nature. In one section of its response brief, at page 5, UPR speculates that it is unusual that WWE Family Investors Group invested so much in WWE shares and questions whether the losses are overstated, and then, at page 7, UPR speculates that WWE Family Investor Group has other accounts that traded in WWE securities and questions whether their claimed losses are therefore incomplete. These purely speculative statements not only contradict each other, but they contradict Mr. Ansari's sworn certifications that he has included all of the relevant trade data from all of his and his family's accounts. *See id.*

The fact that the three other movants have conceded that they are not the presumptive lead plaintiff is a further sign that UPR's attacks are baseless as the other movants and their counsel presumably investigated Movant's trading data, as well as Movant's typicality and adequacy, and did not find any proof of inadequacy. While UPR may wish that Mr. Ansari and

his family had not invested and lost 16 times more money during the Class Period than UPR did, its baseless suggestion that a family with such high losses is somehow "unusual" does nothing to rebut the presumption in the statute with proof of inadequacy.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Such irresponsible accusations that lack any foundation do nothing but highlight the questionable judgment of UPR and its chosen counsel.[4]  UPR and UPR Counsel's requests for additional information constitute at best a fishing expedition.  Such a fishing expedition is expressly discouraged by the PSLRA which requires that a competing movant offer "proof" that the presumptive lead plaintiff will not be adequate.  *See e.g, Knisely v. Network Assoc., Inc.,* 77 F. Supp. 2d 1111, 1116 (N.D. Cal. 1999).

Ironically, UPR fails to meet the standard it seeks to apply to the Ansari Family regarding authority and control over the accounts in question.  Based on UPR's own certification, it is unclear if UPR understands that it is moving for lead plaintiff or is under the belief that it is already appointed plaintiff.  It is also unclear if the signatory to their certification, Maria del Carmen Lopez Fuentes, is attorney in fact for UPR clients or if she otherwise has authority to commit the fund to this litigation.  If she does, UPR has provided no documentation to support her authority to commit UPR to this litigation.  Moreover, it is unclear whether the UPR Board of Directors has approved these actions.  Considering UPR is a public university, it is also unclear if the school needs legislative approval to file its motion.

### iii.    WWE Family Investor Group's Trading Activity Is Proper

UPR's attacks on the Ansari family for their options trading is baseless under the legal framework of the PSLRA.  Movants who traded in options are regularly appointed lead plaintiffs.  *See e.g., In re Priceline.com Inc. Sec. Litig.*, 236 F.R.D. 89, 99 (D. Conn. 2006)

---

[4] UPR's Counsel's judgment is also called into question by its refusal to agree to WWE Family Investor Group's reasonable proposal to file reply briefs by noon on October 28, 2014, to ensure that the Court has sufficient time to review the full briefing prior to the hearing, should it so choose.  *See* Miller Decl. at Exh C.

(allowing the appointment as lead plaintiff of a purchaser and holder of put options); *see also In re Donkenny Inc. Sec. Litig.,* 171 F.R.D. 156, 158 (S.D.N.Y. 1997) (finding that options trader met typicality and adequacy requirements); *In re Adobe Sys., Inc. Sec. Litig.,* 139 F.R.D. 150, 155 (N.D. Cal. 1991) (finding the typicality requirement of Rule 23 was met for lead plaintiff options traders "since the value of options is directly related to the value of common stock"). Moreover, in this case, the proposed Class includes purchasers of all WWE securities, not just WWE common stock. WWE Group is perhaps therefore better suited to represent the Class due to its trading in both common stock and options than would be a movant who only traded in one type. The cases cited by UPR are readily distinguishable.[5]

UPR's final specious attack on WWE Family Investors Group concerns its trading activity. Without citing to or referencing any specific trades, UPR claims that the WWE Family Investors Group bought and sold large volumes of shares on multiple days during the Class Period, and that this would subject the WWE Family Investors Group to unique defenses which would disqualify it. UPR fails to even begin to explain which trades of WWE Family Investors Group raised question, or how such trading was applicable to day-trading standards based on case law. If they had provided such an analysis, it would clearly show that WWE Family Investors Group's trading was not based on day trading. WWE Group held WWE shares in six accounts, including two IRA accounts and two trusts, and maintained large amounts of WWE shares in each account for long periods of time. Regardless of the fact that WWE Family

---

[5] In *Andrada v. Atherogenics, Inc.*, 05-00061, 2005 U.S. Dist. LEXIS 6777, at *14-15 (S.D.N.Y., Apr.18, 2005) the court held that the movant was atypical and inadequate because it "*only* purchased call options and not any of the underlying Atherogenics common stock") (emphasis in original); in *Weikel v. Tower Semiconductor, Ltd.*, 183 F.R.D. 377, 391 (D.N.J. 1998) the court found the lead plaintiff to be an improper class representative at class certification stage because he traded in Euro Options, and there was no evidence that any other class member traded in Euro Options;  and in *Margolis v. Caterpillar, Inc.*, 815 F. Supp. 1150, 1153, 1156 (C.D. Ill. 1991) the court held that a movant who only traded in options was still an adequate class representative, but because she only traded in options, she could only represent a class of option holders.

Investors Group did not engage in day-trading or any activity resembling day trading, "the prevailing view in this Circuit is that 'day and momentum traders have the same incentives to prove defendants' liability as all other class members, and their presence in a securities class does not create intra-class conflicts.'" *See Prefontaine v. Research in Motion Ltd.*, 2012 U.S. Dist. LEXIS 4238 (S.D.N.Y. Jan. 5, 2012), *citing In re Initial Public Offering Sec. Litig.*, 227 F.R.D. 65, 108 (S.D.N.Y. 2004).

### C. UPR's Position Is Detrimental to the Class

UPR's argument that options-holders are not typical of common-stock holders implies that any person who held options during the Class Period would not be members of the same class as common stock-holders. This is wrong and could limit the recovery of the proposed Class, which is defined in both Complaints to include all holders of WWE securities, not just common stock. *See* Dkt. # 1, ¶ 1; *see also Swanson v. World Wrestling Entertainment, Inc., et al.*, Case No. 3:14-cv-01228 (D. Conn., Filed Aug. 25, 2014), Dkt. # 1, ¶ 1. Such a limitation is unnecessary at this point in time, and raises questions about UPR's motivations. *See In re Oxford Health Plans, Inc. Sec. Lit.*, 199 F.R.D. 119, 123-24 (S.D.N.Y. 2001) (holding that options traders were typical and adequate class representatives). While UPR claims to be trying to protect the Class's interest, it is clear that they are willing to sell the Class short in order to serve their self-interest of serving as class representative. These motivations of placing personal interests over the Class's interests call the adequacy of UPR and its Counsel into question.

### CONCLUSION

For all of the foregoing reasons, Movant respectfully requests that this Court: (i) consolidate the related actions and all future related actions; (ii) appoint Movant to serve as Lead

Plaintiff in this consolidated Action; (iii) approve Movant's selection of KSF as Lead Counsel for the Class; and (iv) grant such other and further relief as the Court may deem just and proper.

Dated: October 28, 2014                                    Respectfully submitted,

                              **ROME McGUIGAN, P.C.**

                                /s/  Jeffrey L. Ment
                              Jeffrey L. Ment (# ct12299)
                              Jonathan Chappell (# ct27237)
                              1 State Street, 13th Floor
                              Hartford, CT 06103
                              Telephone:   (860) 549-1000
                              Facsimile:    (860) 724-3921

                              **KAHN SWICK & FOTI, LLC**
                              KIM E. MILLER (KM-6996)
                              BRUCE W. DONA (BD-3730)
                              250 Park Avenue, Suite 2040
                              New York, NY 10177
                              Telephone:  (212) 696-3730
                              Fax:  (504) 455-1498

                              -and-

                              LEWIS S. KAHN
                              206 Covington St.
                              Madisonville, LA 70447
                              Telephone:  (504) 455-1400
                              Fax:  (504) 455-1498

                              *Counsel for WWE Family Investors Group*
                              *& Proposed Lead Counsel for the Class*

## **CERTIFICATE OF SERVICE**

   I hereby certify that this Memorandum was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on October 28, 2014.

                  /s/ Jeffrey L. Ment
                  Jeffrey L. Ment