## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| IN RE WORLD WRESTLING ENTERTAINMENT, INC. SECURITIES LITIGATION | ) <br> ) <br> ) Civil Action No. 14cv1070 (AWT) <br> ) <br> ) Class Action <br> ) |

STATE OF NEW YORK   )
                             ) SS:
COUNTY OF NEW YORK  )

### AFFIDAVIT OF BRIAN MADDOX

1. I, Brian Maddox, am an adult over 21 years of age and I am a resident of the State of New York.

2. I understand that this affidavit will be submitted to the Court in connection with the amended complaint in the lawsuit captioned, "In re World Wrestling Entertainment, Inc. Securities Litigation." I have consulted with my own counsel prior to submitting this affidavit.

3. In this affidavit I will refer to World Wrestling Entertainment as "WWE" or the "Company." I will refer to the amended complaint in this action as the "Amended Complaint."

4. I was not given any opportunity to review the Amended Complaint before it was filed or any other opportunity to review the statements that the Amended Complaint attributes to the "confidential witness" before the Amended Complaint was filed. I did not consent to the use of any purported statements by me in the Amended Complaint. To the best of my

1

recollection, I was not told that anyone intended to use any statements I purportedly made to them in any form of legal document.

5. I have now reviewed the Amended Complaint and believe I am the individual identified in the Amended Complaint as the "confidential witness" ("CW1"). I am submitting this affidavit because the statements attributed to me in the Amended Complaint are not accurate and do not accurately reflect what I said to plaintiffs' counsel. Contrary to the Amended Complaint, I am not aware of any instance in which the Company or anyone else made inaccurate or intentionally misleading public statements about the size of WWE's fan base, the number of its social media followers, the potential outcome of its negotiations of television contracts, the launch and ultimate success of the WWE network, the potential impact of those on its future financial results, or anything else referenced in the Amended Complaint.

6. I became an employee of WWE in 2010 and left on January 16, 2014 -- four months before WWE announced that it had concluded its negotiations with NBCU. Likewise, I left before the WWE network was even launched.

7. During the time I was employed by WWE, I was a vice president responsible for digital advertising sales. My position was a middle management position. I did not attend meetings of the senior executive team at WWE. I do not believe that I ever attended a business meeting with Vincent McMahon or that I was present at any meeting at which Stephanie McMahon Levesque was present and any of the matters referenced in the Amended Complaint were discussed. I believe that I met with Mr. Barrios only once during the four years I was employed by WWE. At that meeting, I spoke to him about advertising, not television contracts, not the WWE network, not the number of fans

WWE has, not the number of social media followers WWE has, and not the potential impact of these on the Company's financial results. My conversations with Michelle Wilson were overwhelmingly about digital advertising rather than about matters referenced in the Amended Complaint.

8.   I had no involvement in WWE's negotiation of its television contracts with NBC Universal or with any other company, and have no knowledge contradicting any public statements that anyone at WWE made regarding those negotiations or WWE's expectations regarding the success of those negotiations. I told Plaintiff's counsel that any discussion regarding these matters were statements of my own personal opinion and were not intended to be statements of fact. I have no reason to believe that anyone at WWE made inaccurate or intentionally misleading public statements about their expectations regarding the potential success of the television contract negotiations or anything else regarding the television negotiations.

9.   I had no involvement in WWE's development or launch of the WWE network, and no knowledge contradicting any public statements that anyone at WWE made regarding the WWE network or its expectations regarding the success of the network. I told Plaintiff's counsel that any discussion regarding these matters were statements of my own personal opinion and were not intended to be statements of fact. As with the television contracts, I have no reason to believe that anyone at WWE made inaccurate or intentionally misleading public statements about their expectations regarding the potential success of the WWE network. It was never my view that WWE needed anything remotely like 75% of its fans to subscribe to the WWE network for the network to be successful.

10. I have no reason to believe that WWE made inaccurate or intentionally misleading statements about the results of its consumer research on the number of households that have an affinity for WWE content.

11. The document referenced in the Amended Complaint entitled WWE 2014 Roadmap to Budget was created under my direction and relates solely to sales of digital advertising. It has nothing to do with WWE's television advertising or the WWE network. Any comparisons in that document to other sports relate to digital advertising alone, the revenues from which are a small fraction of and distinct from WWE's television revenues.

12. I believe the document referenced in the Amended Complaint entitled Audience Demos_Fall 2012 reflects WWE's demographics compared with the United States population as a whole and not in comparison to NASCAR or other sports. My background does not qualify me to address anything to do with WWE's television negotiations or WWE network.

13. I had no discussions with Plaintiff's counsel regarding the specific rates that television advertisers pay television networks for WWE programming or what they pay for other programming.

14. I do not believe that the Company's public statements about its social media followers were in any way inaccurate or intentionally misleading. I am not aware of any public company that discloses the number of "unique" social media followers to the public.

15. I do not believe that the Company's statements about its fan base were in any way inaccurate or intentionally misleading. WWE has many different types of fans -- for example, there are fans of different WWE television programs in the U.S., fans of WWE

4

television programs overseas, fans of individual wrestlers affiliated with WWE, fans who attend live WWE events, fans who purchase pay-per-view events, fans who follow WWE on various social media, fans who follow individual wrestlers on social media, and fans who subscribe to the WWE network.

16. The statement attributed to "CW1" at Paragraph 16 of the Amended Complaint that the WWE's fan base "was about 1.3 million viewers in any given month" is inaccurate and I believe that the total number of WWE fans significantly exceeds 1.3 million.

17. The complaint alleges that an individual defendant told me to lie to advertisers about the size of WWE's fan base. That is not true. I was never told to lie about the size of WWE's fan base by that individual defendant or any other WWE employee.

18. The complaint alleges that I told Mr. Barrios that advertising revenues would decline and that he did not change the forecast. I told Mr. Barrios that I thought digital advertising revenues would be down, not that advertising revenues in the aggregate would be down. I have no reason to believe that Mr. Barrios issued forecasts that did not reflect his reasonable good faith belief in the accuracy of the forecasts.

19. I am not aware of any inaccurate or intentionally misleading public statements made by the Company or any of the individual defendants in this action.

20. I am not aware of any instance in which the Company or any individual defendant engaged in any wrongdoing as alleged in the Amended Complaint.

21. I make this affidavit to the best of my personal knowledge and recollection.

22. This concludes my affidavit.

Brian Maddox

5

Sworn and subscribed to on this 27ʳᵈ day of January 2015

*Marie A. Acampora*                         January 27, 2015
Notary Public for the State of New York          Date

My commission expires *November 12, 2018*

MARIE A. ACAMPORA
Notary Public-State of New York
No. 01AC5068879
Qualified in Dutchess County
Commission Expires Nov 12, 20_18_

6