# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN RE WORLD WRESTLING ENTERTAINMENT, INC. SECURITIES LITIGATION | Civil No. 14c1070 (AWT) |

# DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S MOTION TO STRIKE CERTAIN PORTIONS OF DEFENDANTS' MOTION TO DISMISS AND THE AFFIDAVIT OF BRIAN MADDOX ATTACHED THERETO

Jerry S. McDevitt (*pro hac vice*)
K&L Gates LLP
210 Sixth Avenue
Pittsburgh, PA 15222-2613
Telephone:  412 355-8608
Facsimile:  412 355-6501
E-mail:  jerry.mcdevitt@klgates.com

Jon Eisenberg (*pro hac vice*)
K&L Gates LLP
1600 K Street, N.W.
Washington, D.C. 20006
Telephone: 202 778-9348
Facsimile:  202 778-9100
E-mail:  jon.eisenberg@klgates.com

Jeffrey P. Mueller (ct27870)
Jonathan B. Tropp (ct11295)
Erick M. Sandler (ct25029)
Day Pitney LLP
242 Trumbull Street
Hartford, CT 06103
Telephone: 860-275-0100
Facsimile: 860-275-0343
Email: jmueller@daypitney.com
Email: jbtropp@daypitney.com
Email: emsandler@daypitney.com

Attorneys  for World Wrestling Entertainment, Inc., Vincent K. McMahon, George A. Barrios, Michelle D. Wilson, and Stephanie McMahon Levesque

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................... 1

II.     In Deciding Whether Plaintiffs Have Pled a Strong Inference of Scienter, this Court May
        Consider that the Confidential Witness Has Repudiated the Alleged Statements on Which
        Plaintiffs Rely to Support that Inference ............................................................. 2

        A.      The Second Circuit's *Campo* Opinion Governs this Case ................................... 2

        B.      The Cases Cited By Plaintiffs Are Inapposite...................................................... 8

        C.      The Statements in the Confidential Witness Affidavit Completely Repudiate the
                Statements Attributed to the Confidential Witness in the Amended Complaint 13

CONCLUSION.................................................................................................................. 15

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Behrens v. Pelletier*,
  516 U.S. 299 (1996)........................................................................................8

*Belmont Holdings Corp. v. Suntrust Banks, Inc.*,
  896 F.Supp.2d 1210 (N.D. Ga. 2012)...............................................................9, 10

*Campo v. Sears Holdings Corp.*,
  371 F. App'x 212 (2d Cir. 2010) .................................................................1, 3, 6, 7

*Campo v. Sears Holdings Corp.*,
  635 F. Supp. 2d 323 (S.D.N.Y. 2009)...................................................................6

*City of Livonia Employees' Ret. Sys. v. The Boeing Co.*,
  No. 09 C 7143, 2011 WL 824604 (N.D. Ill. Mar. 7, 2011) ...............................12, 13

*City of Livonia Employees' Retirement System & Local 295/Local 851 v. Boeing Co.*,
  711 F.3d 754 (7th Cir. 2013) ...............................................................................12

*Derrick Storms v. United States*,
  13-CV-811 (MKB), 2015 U.S. Dist. LEXIS 31998 (E.D.N.Y. Mar. 16, 2015) ......................8

*Duckhorn Wine Co. v. Duck Walk Vineyards, Inc.*,
  13-CV-1642(JS)(GRB), 2014 U.S. Dist. LEXIS 78325 (E.D.N.Y. June 9, 2014) ...............................................................................................................9

*Falso v. Churchville Chili Cent. Sch.*,
  328 F. App'x 55 (2d Cir. 2009) .............................................................................8

*Higginbotham v. Baxter Int'l Inc.*,
  495 F.3d 753 (7th Cir.2007) ..................................................................................3

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  2012 U.S. Dist. LEXIS 123757 (S.D.N.Y. Aug. 29, 2012)...................................11

*In re Applied Micro Circuits Corp. Secs. Litig.*,
  01-CV-0649 K, 2002 U.S. Dist. LEXIS 22403 (S.D. Cal. Oct. 3, 2002) ...............10

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
  851 F. Supp. 2d 1299 (S.D. Fla. 2011) ...........................................................10, 11

*In re Cell Therapeutics, Inc.*,
  No. C10-414MJP, 2010 WL 4791808 (W.D. Wash. Nov. 18, 2010).....................10

*In re Gentiva Sec. Litig.*,
    932 F. Supp. 2d 352 (E.D.N.Y. 2013) ...............................................................11

*In re Harris*,
    464 F.3d 263 (2d Cir.2006).............................................................................3

*In re Millennial Media, Inc. Sec. Litig.*,
    No. 1:14-cv-07923, ECF No. 76 (S.D.N.Y. May 29, 2015) ................................1, 4, 5, 12, 15

*In re Par Pharm. Sec. Litig.*,
    No. CIV.A.06CV3226(PGS), 2009 WL 3234273 (D.N.J. Sept. 30, 2009) ......................10, 11

*In re Proquest Sec. Litig.*,
    527 F. Supp. 2d 728 (E.D. Mich. 2007).........................................................10, 11

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
    412 F.3d 418 (2d Cir.2005)...............................................................................3

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006) .........................................................................................1

*Nechis v. Oxford Health Plans, Inc.*,
    421 F.3d 96 (2d Cir. 2005)................................................................................8

*Pub. Employees' Ret. Ass'n of Colo. v. Deloitte & Touche LLP*,
    551 F.3d 305 (4th Cir. 2009) ...........................................................................15

*Pyett v. Pennsylvania Bldg. Co.*,
    498 F.3d 88 (2d Cir. 2007), rev'd and remanded on other grounds sub nom.,
    *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) ..............................................7

*SEC v. Payton*,
    No. 14 Civ. 4644, 2015 WL 1538454 (S.D.N.Y. Apr. 6, 2015)..............................7

*Tellabs v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)...............................................................................1, 3, 15

*Wu Group v. Synopsys, Inc.*,
    C 04-3580 MJJ, 2005 U.S. Dist. LEXIS 42351 (N.D. Cal. Aug. 10, 2005)..............10, 11

*Xin Wei Lin v. Chinese Staff & Workers' Ass'n*,
    527 F. App'x 83 (2d Cir. 2013) .........................................................................8

## Other Authorities

H.R. Conf. Rep. No. 104-369 (1995) ………………………………………………………..1

## I.     INTRODUCTION

Plaintiffs seek to use an alleged but fully repudiated statement from a confidential source to establish their burden of proving a strong inference of scienter.  While the allegations in the Amended Complaint are insufficient even apart from the repudiation (Def. Mem. 26-29, 38-39), consideration of the repudiation is wholly consistent with the Second Circuit's guidance in *Campo v. Sears Holdings Corp.*, 371 F. App'x 212 (2d Cir. 2010) and the Supreme Court's observation in *Tellabs* that the Private Securities Litigation Reform Act ("PSLRA") was "[d]esigned to curb perceived abuses of the §10(b) private action—'nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests and manipulation by class action lawyers.'" *Tellabs v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 320 (2007) (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006) and citing H.R. Conf. Rep. No. 104-369, p. 31 (1995), U.S. Code Cong. & Admin. News 1995, p. 730).  *See also, e.g.*, *In re Millennial Media, Inc. Sec. Litig.,* No. 1:14-cv-07923, ECF No. 76 at 3-7 (S.D.N.Y. May 29, 2015) (plaintiffs voluntarily dismissed securities class action complaint before motion to dismiss was decided when affidavits revealed they failed to tell confidential witnesses their statements would be used in a complaint, failed to show the confidential witnesses the statements attributed to them in the complaint until after the complaint was filed, and a number of the confidential witnesses, after seeing the statements attributed to them in the complaint, repudiated the statements attributed to them).  Defendants' modest position, fully supported by the case law, is that this Court can—and should—take account of the repudiation in determining whether the Amended Complaint adequately pleads a strong inference of scienter. A contrary position would relieve courts of their obligation under the PSLRA to serve as gatekeepers against unworthy complaints clearing the motion to dismiss stage and moving into the costly and time-consuming discovery process.

At the outset, Plaintiffs' contention that Defendants are asking this Court to make a credibility determination at the motion to dismiss stage is wrong. Although Defendants believe that the sworn affidavit Plaintiffs seek to strike credibly refutes the statements attributed to Plaintiffs' confidential witness in the Amended Complaint, that is not a determination that Defendants are asking this Court—or need this Court—to make at this time. Rather, Defendants merely ask the Court to view the statements attributed to the confidential witness in the Amended Complaint in their appropriate context—not as statements that are necessarily true or false, but rather as statements that, by virtue of their repudiation, cannot serve to create a strong inference of scienter.

## II. In Deciding Whether Plaintiffs Have Pled a Strong Inference of Scienter, this Court May Consider that the Confidential Witness Has Repudiated the Alleged Statements on Which Plaintiffs Rely to Support that Inference

Second Circuit case law clearly gives district courts the ability to consider at the motion to dismiss stage extrinsic refutations by confidential witnesses of statements attributed to them in a complaint. Plaintiffs' protestations to the contrary rely on misstatements of Second Circuit law and on a series of out-of-circuit opinions, none of which are binding and many of which arose in contexts completely different from the one at issue here. In addition, Plaintiffs' contentions that the affidavit presented by Defendants does not conflict with the statements attributed to the witness in the Amended Complaint are simply incorrect. Plaintiffs do not dispute that Mr. Maddox is their "confidential witness," and Mr. Maddox's affidavit squarely rejects the allegations attributed to him.

### A. The Second Circuit's *Campo* Opinion Governs this Case

There is no question that Second Circuit case law allows courts, at the motion to dismiss stage, to take account of the fact of repudiation when determining whether statements attributed

2

to a confidential witness satisfy a plaintiff's pleading requirements under the PSLRA. Indeed, the Second Circuit squarely approved of such a practice in its opinion in *Campo*. In allowing a district court deciding a motion to dismiss consider whether a confidential witness's deposition testimony acknowledged statements attributed to the witness in the complaint, the court stated:

> To assist it in resolving defendants' motion to dismiss, the district court ordered that the confidential witnesses referenced in the complaint be deposed. Plaintiffs challenge the district court's consideration of that deposition testimony. Because they do so only in their reply brief, however, the argument is waived. *See In re Harris*, 464 F.3d 263, 268 n. 3 (2d Cir.2006); *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir.2005). Even assuming the argument is not waived, we conclude that it lacks merit. The anonymity of the sources of plaintiffs' factual allegations concerning scienter frustrates the requirement, announced in *Tellabs*, that a court weigh competing inferences to determine whether a complaint gives rise to an inference of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. at 314, 127 S.Ct. 2499; *see also Higginbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 757 (7th Cir.2007). Because Fed.R.Civ.P. 11 requires that there be a good faith basis for the factual and legal contentions contained in a pleading, the district court's use of the confidential witnesses' testimony to test the good faith basis of plaintiffs' compliance with *Tellabs* was permissible. The court made no credibility determinations, nor did it weigh competing testimony. To the contrary, it relied upon the deposition testimony *for the limited purpose of determining whether the confidential witnesses acknowledged the statements attributed to them in the complaint*. Under these circumstances, we identify no error.

*Id.* at 216 n.4 (emphasis added).

*Campo*, like the present case, was decided at the motion to dismiss stage. Defendants are not asking this Court to do anything more or less than the practice already fully approved by the Second Circuit in *Campo*—to take account of repudiation as part of its obligation to weigh competing inferences in order to determine whether the complaint adequately pleads a strong inference of scienter. As with *Campo*, there is no need to make credibility determinations or weigh competing testimony. The mere existence of the repudiation is enough for the Court to determine that the statements attributed to the confidential witness in the complaint cannot be relied on to create a strong inference of scienter.

Indeed, in a recent case that is fully consistent with *Campo*, a court in this Circuit on two separate occasions *ordered* the production of affidavits from confidential witnesses prior to the consideration of a motion to dismiss. *In re Millennial Media, Inc. Sec. Litig.*, ECF No. 76 at 3-5. The affidavits revealed widespread problems with the statements attributed to the confidential witnesses. Although the plaintiffs voluntarily dismissed the case before the court had the opportunity to rule on a motion to dismiss, the court made clear that it would have considered confidential witness repudiations in the motion to dismiss context. *See id.* at 16 ("Viewed in combination, the inaccuracies reported by CWs 1, 3, 4 and 8 significantly undermine the integrity of the FAC, such that, had plaintiffs not voluntarily dismissed the case, these recantations would have left a materially thinner Complaint for the Court to review on a motion to dismiss.") (internal footnote omitted).[1] The court found it especially problematic that plaintiffs' counsel, prior to filing, never confirmed the quotes attributed to the confidential witnesses in the complaint and by and large never told the confidential witnesses that they would be quoted in a complaint.  The court stated:

> It is difficult to come up with a good reason why counsel would *not* attempt to confirm with a witness, let alone any of the 11 CWs, the accuracy of the statements that counsel intended to attribute to them in a Complaint.  Perhaps counsel feared that, confronted with such statements, the witness might repudiate, or unhelpfully modify or contextualize, the investigator's account of his earlier statements.  Perhaps counsel were pleased with the pungent sound-bites that the investigator reported from CW-4 in particular.  Perhaps counsel feared that a follow-up call to CW-4 to confirm his quotes and determine whether there was a factual basis for them might have led CW-4 to back away, resulting in adjustments that might weaken the draft Complaint.  But this are not good reasons to refrain from checking factual accuracy.  And the Federal Rules of Civil Procedure do not countenance a "see no evil"

---

[1] In contrast to the approach taken by the plaintiffs in *Millennial*, in which they voluntarily dismissed the complaint after they learned of the problems with the confidential witness statements, Plaintiffs here have asked the Court to ignore the repudiation.

> approach to pleading.  A quest for ignorance when preparing a federal-court Complaint diminishes counsel and ill behooves the litigation process.

*Id.* at 17.

While in *Millennial*, the law firm used an "investigator" to meet with confidential witnesses, identical concerns arise when a law firm rather than an investigator fails to show the confidential witness statements that a complaint attributes to him. Indeed, it is difficult to conceive of a reason not to show a confidential witness the statements that a complaint attributes to him other than a fear that the witness would repudiate the statements or insist that they be placed in context.  The court also stated that failing to tell a confidential witness that he would be designated as a confidential witness in a complaint was a violation of "basic decency" and that "[t]he Court, the public, and above all such witnesses have the right to expect better of counsel." *Id.* at 23-24.

In their motion to strike, Plaintiffs raise three arguments with respect to *Campo*: 1) the case is procedurally different from the present matter, 2) the district court did not, according to the Plaintiffs, take the confidential witness's deposition testimony into account when deciding the motion to dismiss, and 3) the *Campo* footnote is dicta.  These arguments fail.

First, Plaintiffs seek to make much of the fact that the original motion to dismiss was denied in *Campo*, that the deposition of the confidential witness was pursuant to a court order in connection with the denial, and that the dismissal of the case only occurred pursuant to a renewed motion to dismiss. *See* Motion to Strike at 5. While true, this is wholly inapposite. Plaintiffs have not attempted to argue (and could not argue) that the standards for when courts can consider materials outside the four corners of a complaint differ depending on whether the motion to dismiss under consideration is or has been renewed. The fact that the district court in

*Campo* took account of the deposition testimony on a renewed motion to dismiss necessarily means that if the testimony had been available in advance of the initial motion, it would have taken account of it at that time. Indeed, the reasons that the Second Circuit gave in approving the district court's use of the deposition—that it was consistent with the court's obligations under *Tellabs* and that the court did not make credibility determinations or weigh competing testimony—have absolutely nothing to do with the distinction between a motion to dismiss and a renewed motion to dismiss. And if a court can account for a repudiation at the motion to dismiss stage, it would be entirely illogical to force Defendants to undergo discovery only to re-raise the issue at a renewed motion after undertaking the very effort that the PSLRA seeks to avoid by creating heightened pleading standards.

Second, Plaintiffs assert that in deciding the renewed motion to dismiss in *Campo*, Judge Kaplan "did not discount the confidential witnesses' information based on the depositions that defendants submitted and Judge Kaplan did not rely on extraneous information to decide a Fed. R. Civ. P. 12(b)(6) motion." Motion to Strike at 5. This statement is both entirely inaccurate and completely inapposite. It is inaccurate because Judge Kaplan specifically stated, "With respect to allegations derived from confidential witnesses, the Court considers *only those allegations that later were corroborated by those witnesses in depositions*." *Campo v. Sears Holdings Corp.*, 635 F. Supp. 2d 323, 330 (S.D.N.Y. 2009) (emphasis added). Consequently, the court *disregarded* any statements that were not corroborated. It is inapposite because even if Judge Kaplan did not take account of the deposition testimony, the Second Circuit assumed that he did for the purpose of testing whether "confidential witnesses acknowledged the statements attributed to them in the complaint," and the court specifically approved the practice. *Campo*, 371 F. App'x at 216 n.4. And importantly, the Second Circuit itself relied on the deposition testimony in affirming the

grant of the renewed motion to dismiss. *Id.* at 217 (noting that the "confidential witness testimony discussed precludes us from concluding that an inference of scienter is 'cogent and at least as compelling as [the] opposing inference'").

Finally, Plaintiffs contend that the *Campo* footnote is dicta because the Second Circuit had already concluded that the plaintiffs had waived their ability to challenge the district court's consideration of the deposition testimony. At the outset, the court's reasoning appears to take the form of an alternate holding with respect to the deposition testimony. *See Campo*, 371 F. App'x at 216 n.4 ("Even assuming the argument is not waived, we conclude that it lacks merit."). *Cf. Pyett v. Pennsylvania Bldg. Co.*, 498 F.3d 88, 92 (2d Cir. 2007), rev'd and remanded on other grounds sub nom. *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009) ("Our conclusion in *Rogers* was an alternative holding, not dicta, and continues to bind our Court."). But even assuming it were dicta, it is a fully reasoned position from the Second Circuit that takes account of Supreme Court precedent and deals cogently with possible counterarguments (such as whether mere consideration would constitute a credibility determination). Given that Plaintiffs have cited to no factually pertinent Second Circuit precedent that prohibits courts from taking account of repudiation for purposes of determining whether a complaint adequately pleads a strong inference of scienter, *Campo*, even if dicta, is highly persuasive. *See generally SEC v. Payton*, No. 14 Civ. 4644, 2015 WL 1538454, at *4 (S.D.N.Y. Apr. 6, 2015) ("While a purist might regard these statements as dicta—since they were not technically necessary to the resolution of the case in *Newman* … nonetheless, these statements seem so clearly intended to give guidance to the lower courts of this Circuit that this Court takes them as binding.")

Ultimately, in *Campo*, the Second Circuit specifically approved of courts' ability to take into account at the motion to dismiss stage extrinsic evidence that a confidential witness

repudiated statements attributed to him in a complaint. It did so to avoid the misuse of confidential witnesses to frustrate the requirement that a complaint give rise to a strong inference of scienter, and it limited the inquiry to whether the confidential witness acknowledged the statements attributed to him in the complaint. Given that Defendants are not asking the Court to make any credibility determinations but only to take notice that the confidential witness has filed a sworn statement repudiating the alleged statements that that Amended Complaint attributes to him, the form of the repudiation—deposition testimony in *Campo* and an affidavit in the present case—has no bearing on the analysis.[2] In light of this, Defendants submit that *Campo* fully governs the facts at issue here.

**B.    The Cases Cited By Plaintiffs Are Inapposite**

Many of the cases cited by Plaintiffs merely restate the general hornbook rule that courts typically do not consider documents outside the four corners of the complaint when deciding a motion to dismiss. These cases do not involve securities class actions, let alone ones involving affidavits repudiating the statements of confidential witnesses relied on in complaints. *See Behrens v. Pelletier*, 516 U.S. 299 (1996) (allegations of constitutional and common law torts); *Xin Wei Lin v. Chinese Staff & Workers' Ass'n*, 527 F. App'x 83 (2d Cir. 2013) (alleged violations of labor laws and claims of fraud, unjust enrichment, breach of fiduciary duty and breach of fair representation); *Falso v. Churchville Chili Cent. Sch.*, 328 F. App'x 55 (2d Cir. 2009) (Title VII and Americans with Disabilities Act claims); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96 (2d Cir. 2005) (claims under the Employee Retirement Income Security Act); *Derrick Storms v. United States*, 13-CV-811 (MKB), 2015 U.S. Dist. LEXIS 31998 (E.D.N.Y.

---

[2] This also disposes of Plaintiffs' perfunctory assertion that if the Court considers the affidavit, then Plaintiffs should be permitted to conduct discovery. *See* Motion to Strike at 4 n.4. Depositions would only be warranted if Defendants were asking the Court to make a credibility determination, which they are not.

Mar. 16, 2015) (alleged constitutional torts and other claims pursuant to the Racketeer Influenced and Corrupt Organizations Act, the Federal Tort Claims Act, the Declaratory Judgment Act and the Administrative Procedure Act); *Duckhorn Wine Co. v. Duck Walk Vineyards, Inc.*, 13-CV-1642(JS)(GRB), 2014 U.S. Dist. LEXIS 78325 (E.D.N.Y. June 9, 2014) (alleged breach of commercial settlement agreement). Defendants take no issue with these hornbook statements but, instead, merely observe that they are completely inapposite to the narrow question presented in the present motion, which is whether a confidential witness's alleged but fully repudiated statements in a case subject to the PSLRA can support a strong inference of scienter for purposes of surviving a motion to dismiss.

Plaintiffs also cite out-of-circuit cases where courts have stricken declarations from confidential witnesses. The most that these cases can possibly establish is that there are varying approaches outside of the Second Circuit to using extrinsic evidence in deciding whether a plaintiff has satisfied his pleading obligations under the PSLRA. The Second Circuit's approach is outlined in *Campo* and is fully consistent with Defendants' position here. Moreover, to the extent that Plaintiffs wish to draw the Court's attention to non-binding authority that is inapposite at best and inconsistent with the Second Circuit's approach at worst, it is worth noting that Plaintiffs did not address *Belmont Holdings Corp. v. Suntrust Banks, Inc.*, 896 F.Supp.2d 1210 (N.D. Ga. 2012), which, as Defendants noted in their motion to dismiss, is consistent with *Campo* and involves declarations from a confidential witness. In *Belmont*, the plaintiff purported to rely on a confidential witness to support allegations that the defendants engaged in fraud and, on that basis, the court initially denied the motion to dismiss. *Belmont*, 896 F.Supp.2d at 1215, 1217-19. Defendants then filed declarations from the confidential witness disavowing the statements that the complaint attributed to him. *Id.* at 1221-23. Based on the declarations, the

9

court reconsidered and granted the motion to dismiss with prejudice. *Id.* at 1229-33. Ultimately, though, the Second Circuit has clearly spoken, and even if other jurisdictions are divided, *Campo* provides the appropriate standard for this Court to consider.

Moreover, almost all of the out-of-circuit cases that the Plaintiffs rely on involved Rule 11 motions for sanctions. *See In re Par Pharm. Sec. Litig.*, No. CIV.A.06CV3226(PGS), 2009 WL 3234273, at *11 (D.N.J. Sept. 30, 2009) (declaration attached to Rule 11 motion); *In re Proquest Sec. Litig.*, 527 F. Supp. 2d 728, 738 (E.D. Mich. 2007) (same); *Wu Group v. Synopsys, Inc.*, C 04-3580 MJJ, 2005 U.S. Dist. LEXIS 42351, at *37-40 (N.D. Cal. Aug. 10, 2005) (same); *In re Applied Micro Circuits Corp. Secs. Litig.*, 01-CV-0649 K (AJB), 2002 U.S. Dist. LEXIS 22403, at *8 (S.D. Cal. Oct. 3, 2002) (defendants attach declarations to motion to dismiss but argue that they are relevant to Rule 11 motion for sanctions).[3]

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 851 F. Supp. 2d 1299 (S.D. Fla. 2011), another case cited by Plaintiffs, also arose in the Rule 11 context but did not involve the use of declarations. Instead, it involved a post-trial motion for sanctions based on the use of confidential witness statements that had subsequently been repudiated. The court granted the motion with respect to use of one repudiated confidential witness statement but denied it with respect to use of other repudiated statements because the court could not determine whether the witnesses had initially made the statements attributed to them in the complaint or whether counsel or their

---

[3] Plaintiffs cite one case, *In re Cell Therapeutics, Inc.*, No. C10-414MJP, 2010 WL 4791808 (W.D. Wash. Nov. 18, 2010), that disagrees with *Campo*, but that decision is obviously not binding on this Court. Moreover, *Cell Therapeutics* did not involve a motion to strike an affidavit but rather pertained to a request to take a deposition.

investigators had fabricated or misrepresented them such that sanctions would be warranted. *Id.* at 1309-1314.[4]

Similarly, in *Wu Group*, defendants attached the declarations to a motion for sanctions. The court concluded that the declarations "raise serious questions about the accuracy of the statements and opinions Plaintiffs attribute to" the confidential witnesses but that the defendants could not carry, in the absence of a credibility determination by the court, their Rule 11 burden to show that "Plaintiffs or their counsel intended, in bad faith, to mislead the Court." *Id.* at *39.[5]

This context is crucial because unlike a Rule 11 motion, where the issue is whether the lawyers satisfied their Rule 11 obligations, at the motion to dismiss stage Plaintiffs have the burden to adequately plead a strong inference of scienter. In the present case, Defendants do not have any burden to convince the court that the lawyers for Plaintiffs violated their Rule 11 obligations when they relied on a confidential witness who has repudiated all of the allegations attributed to him.  That may depend on, for example, why they never showed him the Amended Complaint attributing the statements to him, why they never had him sign something acknowledging the statements the Amended Complaint attributes to him, why they used his statements to support allegations as to matters of which he clearly could have had no knowledge, whether he actually made each of the statements attributed to him, whether he had any

---

[4] Another case cited by Plaintiffs, *In re Advanced Battery Techs., Inc. Sec. Litig.*, 2012 U.S. Dist. LEXIS 123757 (S.D.N.Y. Aug. 29, 2012), involved documents attached to a declaration, but it was the documents, rather than the declaration, that were at issue. The case did not involve repudiation by a confidential witness. And *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352 (E.D.N.Y. 2013), to which Plaintiffs mistakenly attribute the quote from *Advanced Battery Techs.*, does not even involve a motion to strike.

[5] The courts in *Proquest* and *Par Pharm.* were similarly skeptical of the statements provided by confidential witnesses. *Proquest*, 527 F. Supp. 2d at 740 ("Under the lens of *Tellabs*, the Court finds that the most appropriate course under the circumstances is to discount, but not ignore, [the confidential witness's] allegations."); *Par Pharm.*, 2009 WL 3234273, at *12 (quoting same language with approval).

knowledge regarding the Company's third-party research on the total number of its fans worldwide, and whether Plaintiffs' counsel were ever justified in basing fraud charges on the statements of a mid-level digital sales manager who had no connection at all to the television negotiations at the heart of the Plaintiffs' case and who left the Company four months before the television negotiations were concluded. *See, e.g.*, *In re Millennial Media, Inc. Sec. Litig.*, ECF No. 76 at 19 ("If the unreasonableness of failing to undertake rudimentary fact-checking with a witness were not intuitively obvious, the growing body of cases chronicling the repudiation by CWs of statements attributed to them in securities class-action complaints would cinch the need to insist upon such care. Numerous reported decisions have recounted claims by CWs that such complaints inaccurately attributed facts and statements to them."); *City of Livonia Employees' Retirement System & Local 295/Local 851 v. Boeing Co.,* 711 F.3d 754, 760-62 (7th Cir. 2013) (affirming dismissal with prejudice and remanding for consideration of sanctions where, among other reasons, "[n]o one had bothered to show the complaint to [the confidential witness]" and the confidential witness later denied the allegations attributed to him).[6] There will be a time for

---

[6] In *Boeing*, the district court's dismissal with prejudice, affirmed by the Seventh Circuit, is fully supportive of the Second Circuit's approach in *Campo*. Specifically, in *Boeing*, after an initial motion to dismiss was denied, a confidential witness relied on in the complaint provided a declaration and was deposed. Both the declaration and the deposition repudiated the information attributed to the witness in the complaint. The court granted a renewed motion to dismiss and expressly concluded that if the new information had been "disclosed while the dismissal motions were pending, the court would not have concluded that the confidential source allegations were reliable, much less cogent and compelling. The second amended complaint would have been dismissed, possibly with prejudice, as insufficient under the PSLRA." *City of Livonia Employees' Ret. Sys. v. The Boeing Co.*, No. 09 C 7143, 2011 WL 824604, at *4 (N.D. Ill. Mar. 7, 2011). The court rejected the argument that considering information "beyond the allegations of the second amended complaint" was "in derogation of rule 12(b)(6)" and concluded, as did the Second Circuit in *Campo*, that the "flaw in plaintiffs' argument is that the underlying motions to dismiss were not simply governed by Rule 12(b), but also by the higher pleading standard required by the PSLRA. To survive a motion to dismiss, particularized facts must be alleged that support a strong inference of scienter; the inference must be cogent and at least as compelling as an opposing inference." *Id.* at *3. The court also rejected the notion that it needed to make a

that, but it is not now. At this stage, Defendants merely ask the Court to reach the same

conclusion that the *Wu Group* court did—that the affidavit of Plaintiffs' confidential witness

"raise[s] serious questions about the accuracy of the statements and opinions" attributed to him.

Such a conclusion does not require a credibility determination, but merely an acknowledgment

that completely repudiated alleged statements cannot support a strong inference of scienter.

### C.  The Statements in the Confidential Witness Affidavit Completely Repudiate the Statements Attributed to the Confidential Witness in the Amended Complaint

In one of the more brazen attempts to deny the obvious, Plaintiffs assert that "the

statements made in the affidavit do not conflict with the statements attributed to CW1 in the

Complaint." (Motion to Strike at 7). Much of what appears in that section of Plaintiffs' brief is,

instead, a description of counsel's "corroborative recollections" of what Mr. Maddox purportedly

said (Motion to Strike at 8), an acknowledgment that Plaintiffs never gave Mr. Maddox an

opportunity to review the Complaint before it was filed (Motion to Strike at 9), a non-denial of

the fact that Mr. Maddox never consented to the use of any statements by him in the Complaint

(Motion to Strike at 9),  and a conclusory assertion that counsel satisfied their Rule 11

obligations (Motion to Strike at 11).  Plaintiffs' curious denial of the contradiction between Mr.

Maddox's affidavit and the allegations attributed to him in the Amended Complaint ignores the

following statements from the affidavit:

1. Contrary to the Amended Complaint, I am not aware of any instance in which the Company or anyone else made inaccurate or intentionally misleading public statements about the size of WWE's fan base, the number of its social media followers, the potential outcome of its negotiations of television contracts, the launch and ultimate success of the WWE network, the potential impact of those on its future financial results, or anything else referenced in the

---

credibility determination in order to take account of the repudiation. *Id.* at *4 ("It matters not whether, as plaintiffs argue, [the witness] told their investigators the truth, but he is lying now for ulterior motives. The reality is that the informational basis for paragraphs 139–42 is at best unreliable and at worst fraudulent, whether it is [the witness] or plaintiffs['] investigators who are lying.").

Amended Complaint. (Aff. ¶ 5).

2. During the time I was employed by WWE, I was a vice president responsible for digital advertising sales. My position was a middle management position. I did not attend meetings of the senior executive team at WWE. I do not believe that I ever attended a business meeting with Vincent McMahon or that I was present at any meeting at which Stephanie McMahon Levesque was present and any of the matters referenced in the Amended Complaint were discussed. I believe that I met with Mr. Barrios only once during the four years I was employed by WWE. At that meeting, I spoke to him about advertising, not television contracts, not the WWE network, not the number of fans WWE has, not the number of social media followers WWE has, and not the potential impact of these on the Company's financial results. My conversations with Michelle Wilson were overwhelmingly about digital advertising rather than about matters referenced in the Amended Complaint. (Aff. ¶ 7).

3. I have no reason to believe that anyone at WWE made inaccurate or intentionally misleading public statements about their expectations regarding the potential success of the television contract negotiations or anything else regarding the television negotiations. (Aff. ¶ 8).

4. I had no discussions with Plaintiff's counsel regarding the specific rates that television advertisers pay television networks for WWE programming or what they pay for other programming. (Affid. ¶ 13).

5. I do not believe that the Company's public statements about its social media followers were in any way inaccurate or intentionally misleading. I am not aware of any public company that discloses the number of "unique" social media followers to the public. (Aff. ¶ 14).

6. I do not believe that the Company's statements about its fan base were in any way inaccurate or intentionally misleading. WWE has many different types of fans—for example, there are fans of different WWE television programs in the U.S., fans of WWE television programs overseas, fans of individual wrestlers affiliated with WWE, fans who attend live WWE events, fans who purchase pay-per-view events, fans who follow WWE on various social media, fans who follow individual wrestlers on social media, and fans who subscribe to the WWE network. (Aff. ¶ 15).

7. The complaint alleges that an individual defendant told me to lie to advertisers about the size of WWE's fan base. That is not true. I was never told to lie about the size of WWE's fan base by that individual defendant or any other WWE employee. (Aff. ¶ 17).

8. The complaint alleges that I told Mr. Barrios that advertising revenues would decline and that he did not change the forecast. I told Mr. Barrios that I thought digital advertising revenues would be down, not that advertising revenues in the aggregate would be down. I have no reason to believe that Mr. Barrios issued forecasts that did not reflect his reasonable good faith belief in the accuracy of the forecasts. (Aff. ¶ 18).

9. I am not aware of any inaccurate or intentionally misleading public statements made by the Company or any of the individual defendants in this action. (Aff. ¶ 19).

14

Suffice it to say that Plaintiffs' assertion that the statements in the affidavit "do not conflict with the statements attributed to CW1 in the Complaint" is not correct. Indeed, it is difficult to imagine an affidavit that more clearly repudiates the statements attributed to a confidential witness in a complaint. *Cf. In re Millennial Media, Inc. Sec. Litig.*, ECF No. 76 at 16 ("This is not a case of merely isolated or immaterial differences between a Complaint and the declarations of a recanting witness, deficiencies which, although regrettable, do not fundamentally affect the integrity of a Complaint. . . . The deficiencies reported by the CWs here are pervasive.").

## CONCLUSION

Plaintiffs seek to rely on an alleged but fully repudiated statement by a confidential witness to meet their pleading standard under the PSLRA. Not only is such an outcome at odds with the Second Circuit's *Campo* decision, it also defies the commonsense and the practical purpose of the PSLRA. As the Supreme Court has stated, "Private securities fraud actions, however, if not adequately contained, can be employed abusively to impose substantial costs on companies and individuals whose conduct conforms to the law. As a check against abusive litigation by private parties, Congress enacted the [PSLRA]." *Tellabs*, 551 U.S. at 313 (2007); *cf. Pub. Employees' Ret. Ass'n of Colo. v. Deloitte & Touche LLP*, 551 F.3d 305, 312 (4th Cir. 2009) (noting that the purpose of requiring a strong inference is to "weed out meritless claims at the pleading stage, without forcing defendants to go through a potentially costly discovery process"). Such gatekeeping cannot be served by turning a blind eye to the existence of a witness's flat repudiation of the statements attributed to him in a complaint. As a result, Defendants respectfully asks the Court to deny Plaintiffs' motion to strike.

Dated:          June 1, 2015

Respectfully submitted,

_____

Jerry S. McDevitt (*pro hac vice*)
K&L Gates LLP
210 Sixth Avenue
Pittsburgh, PA 15222-2613
Telephone: 412 355-8608
Facsimile:  412 355-6501
E-mail:  jerry.mcdevitt@klgates.com

Jon Eisenberg (*pro hac vice*)
K&L Gates LLP
1600 K Street, N.W.
Washington, D.C. 20006
Telephone: 202 778-9348
Facsimile: 202 778-9100
E-mail: jon.eisenberg@klgates.com

Jeffrey P. Mueller (ct27870)
Jonathan B. Tropp (ct11295)
Erick M. Sandler (ct25029)
Day Pitney LLP
242 Trumbull Street
Hartford, CT 06103
Telephone: 860-275-0100
Facsimile: 860-275-0343
Email: jmueller@daypitney.com
Email: jbtropp@daypitney.com
Email: emsandler@daypitney.com

Attorneys  for World Wrestling Entertainment, Inc.,
Vincent K. McMahon, George A. Barrios, Michelle
D. Wilson, and Stephanie McMahon Levesque

**CERTIFICATION**

I hereby certify that on this date a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Jeffrey P. Mueller
Jeffrey P. Mueller (ct27870)

17