UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|   |   |
|---|---|
| IN RE WORLD WRESTLING ENTERTAINMENT, INC. SECURITIES LITIGATION | Civil No: 14cv1070 (AWT) |

**REPLY IN SUPPORT OF LEAD PLAINTIFF'S MOTION TO STRIKE CERTAIN PORTIONS OF DEFENDANTS' MOTION TO DISMISS AND THE AFFIDAVIT OF BRIAN MADDOX ATTACHED THERETO**

Defendants sheepishly retreat from their position that "[g]iven his repudiation, the only meaningful issue left in the case will be whether the plaintiffs violated Rule 11 when they filed the Amended Complaint," (Dkt. No. 77-1 at 1), to the "modest position" that the Court should "take account of the repudiation in determining whether the Amended Complaint adequately pleads a strong inference of scienter." Dkt. No. 85 ("Opp. Br.") at 1. Defendants backpedaled from their previous position, which was a baseless, chest-pounding attempt to chase Plaintiff out of the case, and that would have required the Court to improperly replace the well-pleaded facts of the Complaint with those in the Affidavit. Defendants' new approach is surprising because, even if the Court were able to consider the Affidavit for this limited purpose—which no case, including *Campo v. Sears Holding Corp.,* 371 F. App'x. 212 (2d Cir. 2010), has so held—the statements attributed to Brian Maddox (CW1) in the Amended Complaint are even more supportive of scienter in light of his signed affidavit.

As the emails attached to Plaintiff's Motion to Strike unambiguously establish, **Maddox contacted Lead Counsel** to shed light on Defendants' fraudulent misrepresentations and omissions during the Class Period, not the other way around. Defendants do not even address

1

the three separate declarations submitted by Lead Counsel and numerous emails between Maddox and Lead Counsel that directly contradict the statements made his sworn affidavit. Given that, without solicitation, Maddox contacted Lead Counsel and volunteered specific information—much of which is in writing—regarding Defendants' misrepresentations and omissions, the fact that he later submits a sworn affidavit repudiating those specific statements does not call into question the truthfulness of the allegations attributed to him in the Complaint, but rather the suspicious circumstances under which Maddox was pressured to submit such a retraction.

For the Court to consider the Affidavit's supportive effect on the scienter analysis would require the Court to conduct a credibility determination—weighing the truthfulness of Maddox' facts reported to Lead Counsel versus the version of facts submitted by Defendants as later repudiated by Maddox—which the Court may not do at this stage.

Defendants "take no issue with the[] hornbook" legal principal that a district court may not generally consider material beyond the pleadings on Rule 12(b)(6) motion to dismiss, but instead argue that the law affords a narrow exception for repudiating affidavits of confidential witnesses in securities class actions governed by the PSLRA. Opp. Br. at 9. No legal authority, Second Circuit or otherwise, has ever established such an exception. No matter how much Defendants twist, stretch, and extrapolate from the Second Circuit's decision in *Campo*, and this District Court's decision in *In re Millennial Media*, *Inc. Sec. Litig.,* No. 1:14-cv-07923, ECF No. 76 (S.D.N.Y. May 29, 2015), those opinions do not hold that courts may consider such affidavits attached to an initial motion to dismiss. Both cases are procedurally inapposite, and at a minimum, factually distinguishable. Indeed, the balance of authority, including the hornbook rule, weighs against consideration of this extrinsic material at this stage.

As further explained below, 1) Plaintiff's Motion to Strike should be granted, because no legal authority supports consideration of the Maddox Affidavit; 2) if the Court considers the Affidavit, the PSLRA discovery stay should be lifted to allow limited discovery into the circumstances under which Maddox Affidavit was prepared; and 3) absent such discovery and in light of the factual record, the submission of the Maddox Affidavit supports the inference of scienter.

### A.   LEGAL AUTHORITY REJECTS CONSIDERATION OF THE MADDOX AFFIDAVIT AT THIS STAGE

District courts may not consider any material beyond the pleadings on a Rule 12(b)(6) motion, absent a few very limited circumstances. *See Derrick Storms v. United States*, 13-CV-811 (MKB), 2015 U.S. Dist. LEXIS 31998, at *15 n.8 (E.D.N.Y. Mar. 16, 2015) ("When deciding a motion to dismiss, a court's review is limited to the four corners of the complaint but a court may also review (1) documents attached to the complaint, (2) any documents incorporated in the complaint by reference, (3) documents deemed integral to the complaint, and (4) public records."). Here, where the Maddox Affidavit does not fall under one of these limited, enumerated exceptions, the Court must refuse to consider it.

Defendants stubbornly—and incorrectly—insist that the Second Circuit's opinion in *Campo* indicates that the Court may consider the Affidavit in deciding Defendants' motion to dismiss. *See* Opp. Br. at 2-7. As explained in Plaintiff's Motion to Strike (the "Motion"), Defendants manufacture this argument using a single footnote in *Campo* that is non-binding dicta, as the issue regarding the submission of the extrinsic testimony was held to have been waived on appeal. *See Campo*, 371 Fed. Appx. at 216 n.4; *In re Cell Therapeutics, Inc.*, 2010 U.S. Dist. LEXIS 125782, c10-414MJP (W.D. Wash. Nov. 18, 2010) ("The Court does agree with Plaintiffs that the language in the 2nd Circuit *Campo* opinion (which again appears to

3

support the practice of deposing CWs prior to bringing a motion to dismiss, this time by conflating the requirements of FRCP 11 with prior rulings concerning *scienter*) is dicta"). Nevertheless, the *Campo* decision only suggests that extrinsic material may be considered after the opening of discovery, and only in the form of a deposition, not an affidavit.

In *Campo*—and in *Belmont Holdings Corp. v. Suntrust Banks, Inc.*[1]—defendants' motion to dismiss was initially **denied** by the district court, and only after that ruling did the court open discovery. *See Campo v. Sears Holdings Corp.*, 06 Civ. 4053 (JES), 2008 U.S. Dist. LEXIS 118377, at *2 (S.D.N.Y. Apr. 16, 2008) (Sprizzo, J); *Belmont Holdings Corp. v. Suntrust Banks, Inc.*, 896 F. Supp. 2d 1210, 1215 (N.D. Ga. 2012). During discovery, defendants obtained deposition testimony of the confidential witness, and thereafter filed a renewed motion to dismiss. The case had been reassigned, and a different judge, Judge Kaplan, granted the renewed motion to dismiss, but his ruling was not based on the extraneous deposition testimony submitted by defendants. Judge Kaplan then took a less favorable view of plaintiffs' case than Judge Sprizzo, *see Campo*, 635 F. Supp. 2d at 329-36, and held, *inter alia*, that the information in the complaint from the confidential witnesses—properly accepted as true—was insufficient to satisfy the pleading requirements under the PSLRA. *See id.* at 235.

Here, the fundamental procedural differences that render *Campo* inapposite and inapplicable are that: 1) the Court has not yet ruled on Defendants' motion to dismiss and

---

[1] In *Belmont*, an out of circuit case out of the Northern District of Georgia, the court only reviewed the declarations of the witness after the Court had denied the motion to dismiss, and after defendants had submitted motions for reconsideration and for Rule 11 sanctions. *Belmont*, 896 F. Supp. 2d at 1215. Moreover, Defendants had submitted an "extensive record of cooperative email correspondence between [the witness] and [defense counsel]" in order to determine that the declaration was not the product of intimidation. *Id*. at n.12. Here, the opposite has occurred. Plaintiff has submitted evidence showing that Maddox volunteered the information to Plaintiff, and Defendants have submitted no evidence that the Affidavit was not the product of coercion.

discovery is stayed under the PSLRA; and 2) Defendants are attempting to introduce an affidavit, not deposition testimony.  Defendants' argument that affidavits and depositions are procedurally indistinguishable is at best misguided.  Def. Br. at 8.  Depositions are discovery tools, in which both parties are allowed to participate, and that consideration of a deposition prior to a motion to dismiss is improper.  *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp. 2d 374, 388 (S.D.N.Y. 2013). ("Defendant cannot introduce testimonial evidence from depositions on a motion to dismiss pursuant to Rule 12(b)(6), as the Court is limited to reviewing the allegations in the complaint and documents attached to it or incorporated by reference."); *see also City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp*., No. 11 Civ. 5026(JSR), 2013 WL 3796658 (S.D.N.Y. July 23, 2013) (depositions taken after motion to dismiss and arguments concerning confidential witness recantations asserted at summary judgment, which were rejected).

Defendants' analogy of this case to *In re Millennial Media* is also well off the mark. In that case, plaintiffs voluntarily dismissed their case after Defendants attached affidavits of the confidential witnesses to their motion to dismiss. *Id*., 1:14-cv-07923, ECF No. 76 at 3-7.  Thus, the court in *In re Millennial Media* never reached the issue of whether consideration of the affidavits was procedurally improper on motion to dismiss, because it never ruled on the motion. *Id*.

Regardless of the procedural distinctions, a cursory glance at the court's guidance in *In re Millennial Media* confirms the critical factual differences between the two cases.  Specifically, in *In re Millennial Media*, an investigator interviewed the witnesses and counsel failed to follow up with them to confirm the reports of the investigator.  *Id*. at 17.  Here, after Mr. Maddox reached out to Lead Counsel, Lead Counsel spoke with Mr. Maddox personally, had certain information

5

in writing, and proceeded to follow up with him in order to confirm and clarify certain statements he had made. *See* Declarations of Lewis Kahn ("Kahn Decl.") at ¶¶2, 16, 17, Kim Miller ("Miller Decl.") at ¶¶ 2-6, and J. Ryan Lopatka ("Lopatka Decl.") at ¶¶2-5. Thus, Lead Counsel was particularly mindful to present the allegations attributable to Mr. Maddox in the Amended Complaint as he conveyed them to Lead Counsel. While the weighing of competing evidence is patently improper at this stage, the fact that Defendants' opposition brief bizarrely ignores the detailed affidavits and supporting documentation submitted by two partners and an associate at Lead Counsel which strongly corroborate each other and include emails in Mr. Maddox's own words that certainly do not conform to the statements in "his" affidavit speaks volumes.

The *Campo*, *Belmont*, and *In re Millennial Media* cases are all procedurally and factually inapposite to the situation here, and because the weight of authority rejects consideration of the Maddox Affidavit at this stage, the Court should grant Plaintiff's motion to strike. *See In re Applied Micro Circuits Corp. Secs. Litig,*. 01-CV-0649 K (AJB), 2002 U.S. Dist. LEXUS 22403, at *31 (S.D. Cal. Oct. 3, 2002); *Halford v. AtriCure, Inc.*, 1:08cv867, 2010 U.S. Dist. LEXIS 144377, at *9-*12, *62 (S.D. Ohio Mar. 29, 2010) (granting plaintiff's motion to strike defendants' affidavits of confidential witnesses in the context of a motion to dismiss); *In re Par Pharm. Sec. Litig.*, 06-cv-3226 (PGS), 2009 U.S. Dist. LEXIS 90602, at *37 (D.N.J. Sept. 30, 2009) ("[T]he Court does not want to establish mechanisms whereby discovery must be conducted every time confidential informants are utilized, forcing the Court to reconcile competing facts to determine whether allegations in a complaint should be struck.").

**B.    IF THE COURT CONSIDERS THE AFFIDAVIT, THE PSLRA DISCOVERY STAY SHOULD BE LIFTED**

Should the Court agree to consider the Affidavit, Plaintiff intends to seek leave to

conduct his own discovery. Such discovery would include, among other things, (1) the deposition of Mr. Maddox, the WWE former employee who signed the Affidavit; (2) the deposition of all persons who assisted in drafting the Affidavit of Mr. Maddox; and (3) the deposition of all persons with whom Mr. Maddox discussed either the Affidavit or any confidentiality or settlement agreement. This discovery would explore the reasons why Mr. Maddox approached Lead Counsel, offered information and documents to support Plaintiff's case against Defendants, but then suddenly recanted those statements in an affidavit submitted by Defendants. Such discovery will be necessary to prevent prejudice to Plaintiff from any information the Court allows from outside the Complaint.

Defendants, tellingly, do not want the Court to open discovery to review that information, and instead insist that the Court only consider the affidavit and take it at face value as a full recantation of every allegation attributable to Maddox in the Amended Complaint. Opp. Br. at 6, 8 n.2. Yet, Defendants' approach would open the door for corporate defendants and their counsel to intimidate confidential witnesses into signing recantation affidavits, because under Defendants' rationale, the mere filing of the affidavit serves to undermine all allegations attributable to that witness. At least one Court has acknowledged this result. In *In re Applied Micro Circuits Corp. Secs. Litig.*, 01-CV-0649 K (AJB), 2002 U.S. Dist. LEXIS 22403, defendants submitted declarations they attributed to plaintiffs' confidential witnesses as part of a motion to dismiss. The court properly ordered the declarations struck from the record. *See id.* at *31. The court further explained that even if defendants put forward some credible evidence regarding possible recanting by confidential witnesses, "Plaintiff provides a plausible explanation as to why sources are now contradicting themselves; Plaintiff claims the change occurred after having been contacted by Defendants' attorneys." *Id.*

If this Court considers the Affidavit, or any evidence beyond the pleadings, the proper procedure is for the Court to convert Defendants' Motion to Dismiss into one for summary judgment.  Fed. R. Civ. P. 12(d);  *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) ("[I]f, on a motion [for dismissal under Rule 12(b)(6)], matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

**C.  ABSENT DISCOVERY, THE AFFIDAVIT SUPPORTS THE INFERENCE OF SCIENTER**

If the Court considers the Affidavit without discovery into its preparation, the factual record supports the veracity of allegations attributable to Maddox in the Complaint, calls into question the truthfulness of statements in the Affidavit, and ultimately supports the inference of scienter.

As explained in Plaintiff's Motion, the statements attributable to CW1 in the Complaint were gathered after Mr. Maddox – a former Vice President at WWE -- reached out directly to the managing partner of Lead Counsel for Plaintiffs, Lewis Kahn.  Kahn Decl. at ¶2.  In emails to Lead Counsel, Maddox made written statements that directly contradict the statements that appear in his Affidavit.  For example, the Affidavit states that Maddox "does not believe that the Company's statements about its fan base were in any way inaccurate" and that he is "not aware of any instance in which the Company or anyone else made inaccurate or intentionally misleading public statements the size of WWE's fan base, . . . , or anything else referenced in the Amended Complaint." Affidavit at ¶5.  In stark contrast, in an email to Lead Counsel, Maddox wrote:  "WWE has roughly 3-4m fans in the us. Not the 40M+ fans they claim to have in the us. Also there is a huge difference between fans and households.  The 1.2m number they needed to

8

reach was a stretch at best. They had 1m wrestlemania buys last years." Kahn Decl. at Exhibit 1; *see also* Kahn Decl. at Exhibit 6. ("There is a lot of duplication in these numbers so may they have 1.5 unique people ordering PPV events in a year. At 1.2M it is break even. There entire universe is what 2-3M."). Similarly, the Affidavit states: "I had no discussions with Plaintiff's counsel regarding the specific rates that television advertisers pay television networks for WWE programming or what they pay for other programming." Affidavit at ¶8. Again, this statement is contradicted from his emails to Lead Counsel, in which he stated: "I saw this coming from a mile away not sure how the CMO and CRO Michele Wilson couldn't. First nbcu would have had to double there standard unit rate for a :30 sec spot in raw and smackdown to have the deal make sense…. Also the advertisers are the ones who drive the tv deal with nbcu. WWE has never gotten premium rates or been considered a key sports property. It falls under the entertainment property by advertisers. Very different pricing structures." Kahn Decl. at Exhibit 1.

If the Court reviews the Affidavit at face value and in its appropriate context, it is the preparation of the Affidavit, not the Amended Complaint, that should come under scrutiny. Indeed, should the Court come to the logical conclusion that Mr. Maddox was pressured by Defendants and their counsel to submit the Affidavit, especially in light of the fact that Mr. Maddox provided his confidentiality agreement with WWE to KSF because he feared reprisal from the Company (Kahn Decl. at ¶11 and Exhibit 6.), and that the Affidavit does not represent a truthful depiction of his correspondence with Lead Counsel, the allegations attributable to Maddox in the Amended Complaint should be deemed more compelling and foster an even stronger inference of scienter.

9

**D.    CONCLUSION**

For the foregoing reasons, Lead Plaintiff respectfully requests that this Court strike and/or disregard from Defendants' Motion the entirety of the Affidavit and all references to and statements regarding the Affidavit.

Dated: June 19, 2015

By:    /s/ Mark P. Kindall
Mark P. Kindall (# ct13797)
**IZARD NOBEL LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Fax: (860) 493-6290
mkindall@izardnobel.com

JEFFREY L. MENT (# ct12299)
JONATHAN CHAPPELL (# ct27237)
**ROME McGUIGAN, P.C.**
1 State Street, 13th Floor
Hartford, CT 06103
Telephone: (860) 549-1000
Fax: (860) 724-3921

*Local Counsel for Lead Plaintiff Mohsin Ansari*

**KAHN SWICK & FOTI, LLC**
KIM E. MILLER (admitted *pro hac vice*)
250 Park Avenue, Suite 2040
New York, NY 10177
Telephone: (212) 696-3730
Fax: (504) 455-1498

-and-

Lewis S. Kahn
206 Covington Street
Madisonville, LA 70447
Phone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com

*Lead Counsel for Lead Plaintiff Mohsin Ansari*

**BROWER PIVEN**
  A Professional Corporation
David A.P. Brower
Richard H. Weiss
475 Park Avenue South, 33rd Floor
New York, NY 10016
Telephone: (212) 501-9000
Facsimile: (212) 501-0300

*Additional Counsel for Proposed Additional Plaintiff Adnan Shafeeq and the Class*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on June 19, 2015, I filed the Motion to Strike attached hereto upon all counsel of record by using the CM/ECF system and via e-mail. The CM/ECF system will provide service of such filing(s) via Notice of Electronic Filing (NEF).

           /s/ Mark Kindall_____
          Mark Kindall