# K S F

KAHN SWICK & FOTI, LLC

**Kim E. Miller**
Partner – Admitted in NY & CA
Direct: 212.696.3730
kim.miller@ksfcounsel.com

March 14, 2016

The Honorable Alvin W. Thompson
United States District Judge
United States District Court for the
District of Connecticut
United States Courthouse
450 Main Street - Suite 240
Hartford, Connecticut 06103

Re:    In re World Wrestling Entertainment Inc. Securities Litigation,
       C.A. No. 14cv1070 (AWT)

Dear Judge Thompson:

Lead Plaintiff Mohsin Ansari in the above-entitled action (the "Action") respectfully submits this letter in response to the Court's Order, dated March 5, 2016, inviting comment on the Second Circuit's recent decision in *In re Sanofi Securities Litigation, AG Funds, L.P. v. Sanofi*, No. 15-588-cv, 2016 U.S. App. LEXIS 4107 (2d Cir. Mar. 4, 2016) ("*Sanofi*").

The decision in *Sanofi*, while consistent with Plaintiff's application of *Omnicare, Inc. v. Laborers District Counsel Construction Industry Pension Fund*, 135 S. Ct. 1318 (2015), to the facts of this Action contained in Plaintiff's previous submissions to the Court in opposition to Defendants' motion to dismiss, provides little guidance with respect to resolution of that motion here, since unlike the case at bar, *Sanofi* involved sophisticated individual plaintiffs and omissions claims that did not involve information that conflicted with what a reasonable person would take from the challenged representations themselves.

In *Sanofi*, plaintiffs alleged that defendants voiced optimism for FDA approval of a new drug, but failed to disclose that the FDA had voiced "concerns" regarding Sanofi's decision to conduct a single-blind clinical study rather than a double-blind study, which was well known publicly to be the FDA's preference. *See Sanofi, passim*. The Second Circuit held that, under *Omnicare*, defendants' failure to disclose the FDA's concern regarding Sanofi's testing methodology did not constitute an omission rendering defendants' optimistic statements of opinion regarding likely approval of the drug actionably misleading because those concerns did not conflict, as required by *Omnicare*, with any statement of opinion that the defendants made. *See Sanofi*, 588-cv U.S. App. LEXIS 4107, at *27 ("[F]atal to Plaintiffs' case is the absence of any serious conflict between the FDA's interim, albeit repeated, concerns about methodology

The Honorable Alvin W. Thompson
March 14, 2016
Page 2

and Defendants' optimism about FDA approval."). The facts of *Sanofi* are easily distinguishable from the facts here.

As an initial matter, *Sanofi* involved individual, rather than open-market class claims. Much of the Court's analysis, therefore, turned on its view of the sophistication of the named-plaintiffs and their knowledge of the pharmaceutical industry customs and practices, *see, e.g., Sanofi*, 2016 U.S. App. LEXIS 4107, at *26-27, noting that "[w]hile a layperson, unaccustomed to the subtleties and intricacies of the pharmaceutical industry, and registration statements, may have misinterpreted Defendants' statements as evincing assurance of success, Plaintiffs here can claim no such ignorance." *Id.*, at *27.

Moreover, irrespective of the sophistication of the named plaintiffs, in *Sanofi* the Second Circuit found that the risks of non-approval of a drug based on FDA feedback were not alleged to be out of the ordinary and reflected the kind of challenge normally confronted by pharmaceutical companies seeking FDA approval for their drugs, and the Court took judicial notice "that the FDA has long made public its preference for double blinded trial." *Sanofi*, 2016 U.S. App. LEXIS 4107, at *29 (citing *Guidance on Statistical Principles for Clinical Trials*, 63 Fed. Reg. 49583, 49587 (Dep't of Health & Human Servs. Sept. 16, 1998)). Furthermore, defendants disclosed "that they were relying on single-blind trials, and even alluded at times to the desirability of double-blind trials." *Sanofi*, 2016 U.S. App. LEXIS 4107, at *29. In sum, the alleged omitted fact that rendered defendants' opinions misleading was disclosed and publicly known.

As to defendants' optimism for FDA approval notwithstanding Sanofi's use of single-blind testing, the FDA advised defendants that "'a rater blinded (but patient not blinded) study may be adequate if the effect is large,'" even though the FDA "'would prefer double-blinded, controlled studies, especially for the pivotal trials.'" *Sanofi*, 2016 U.S. App. LEXIS 4107, at *5 (quoting Joint App'x at 78). Thus, the Second Circuit found that while the FDA had expressed concern about Defendants' testing methodology, it also stated that any deficiency could be overcome if the results showed an "extremely large effect," and that the parties did not dispute that the drug in question did, indeed, have a large treatment effect. *See Sanofi*, 2016 U.S. App. LEXIS 4107, at *25-26. Thus, the defendants' optimism in obtaining FDA approval, notwithstanding their use of a single-blind methodology, "rest[ed] on some meaningful inquiry – rather than, say, on mere intuition," *Omnicare*, at 1328, and that optimism did not conflict with the FDA's concerns because there could "be no conflict inferred from a statement of optimism consistent with the FDA's instructions as to the treatment results necessary for approval." *Sanofi*, 2016 U.S. App. LEXIS 4107, at *26. Thus, since the FDA itself gave defendants reason to believe that, if the treatment effect was large, approval could result even with single-blind test results, and plaintiffs did not (as they apparently could not) allege that defendants had any reason to believe that the treatment effect would not be large, the defendants' statements of opinion "'fairly align[ed] with the information in the issuer's possession at the time.'" *Sanofi*, 2016 U.S. App. LEXIS 4107, at *22 (quoting *Omnicare*, at 1329). Indeed, a few months after the class period, Sanofi obtained permission from the FDA to resubmit its application for approval of the drug, and the FDA thereafter approved the drug.

As the *Sanofi* court explained in applying the Supreme Court's *Omnicare* standard, "[t]he Court noted that a reasonable investor, upon hearing a statement of opinion from an issuer, 'expects not just that the issuer believes the opinion (however irrationally), but that it fairly

The Honorable Alvin W. Thompson
March 14, 2016
Page 3

aligns with the information in the issuer's possession at the time,'" and that "[t]he core inquiry is whether the omitted information would 'conflict with what a reasonable investor would take from the statement itself.'" *Sanofi*, 2016 U.S. App. LEXIS 4107, at *22 (quoting *Omnicare*, at 1329).

In contrast, here "the omitted facts" undermining WWE's ability to achieve its optimistic statements to investors concerning its growth "'conflict with what a reasonable investor would take from the statement itself.'" *Sanofi*, 2016 U.S. App. LEXIS 4107, at *22 (quoting *Omnicare*, at 1329). *See* Complaint ¶38 ("Defendants knew . . . negotiations had failed to achieve a doubling or tripling of 2012 OIBDA results"); ¶40 ("negotiations for new contract were already faltering"); ¶42 ("WWE was not on track . . . to achieve that financial milestone"); ¶44 ("WWE's market research and analysis did not indicate . . . potential for meaningful subscriber base and a significant opportunity"); ¶46 ("management would recount the same followers many times over to inflate their numbers"); ¶48 ("WWE could not generate the type of advertising revenue that live sports generate"); ¶50 (The Company's number of social media followers were "falsely inflated because it counted the same followers many times over"); ¶52 ("the comparison to NASCAR's lucrative television contract was unfounded"); ¶56 ("NBC would never pay" NASCAR level advertising rates); ¶58 ("WWE's fan base was a fraction of the number presented to the public"); ¶60 ("from the onset other networks had expressed no interest in working with WWE"); ¶62 (WWE was unable "to secure blue-chip sponsors and maintain relationships with advertisers"); ¶65 (statements "directly contrary to the Company's own non-public internal documents"); ¶67 ("management would take the actual number of social media followers and erroneously multiply that number many times over up to the 200+ number"); ¶70 ("NBC was not willing to pay an amount of money for the contract that would come anywhere close to doubling or tripling 2012 OIBDA results"); ¶72 (Defendants "had access to pay-per-view numbers and external research reports which indicated that at most WWE had 4-6 active fans, not 'more than 80 million'").

Accordingly, in *Sanofi*, based upon public information and the facts alleged in the complaint itself or conceded by plaintiffs' counsel to the Court, the alleged omitted information that conflicted with its public statements was already public information, and defendants had a reasonable basis, based on the FDA's own statements to defendants, to make the statements of optimism regarding approval of the drug in question notwithstanding the FDA's preference for a different type of testing methodology. In this Action, facts omitted by Defendants did not align with the opinions defendants provided to investors rendering them actionable under *Omnicare*.

Respectfully submitted,

Kim E. Miller
Bar No. PHV07113

Cc: All Counsel via ECF